George F. DARLAGE, as Surviving Partner of George F. Darlage and Joseph F. Darlage d/b/a Darlage Crane and Earthmoving Service, a Partnership; and Individually, Appellant–Defendant,

v.

Cheryl R. DRUMMOND, Individually as a Creditor of the Estate of Joseph F. Darlage, Deceased; and as Guardian Ad Litem of Christopher George Darlage and Elizabeth Jo Darlage, Sole Devisees of the Will of Joseph F. Darlage, Deceased, Appellees–Plaintiffs.

No. 36A01–9007–CV–278.

Court of Appeals of Indiana,
First District.

Aug. 22, 1991.

Joseph M. Black, Jr., Rothring, Lambring & Black, P.C., Seymour, for appellant-defendant.

F. Jefferson Crump, III, Jewell, Crump & Angermeier, Columbus, for appellees-plaintiffs.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

George F. Darlage, as Surviving Partner of George F. Darlage and Joseph F. Darlage d/b/a Darlage Crane and Earthmoving Service, a Partnership; and Individually (George) appeals from a judgment awarding Cheryl R. Drummond, Individually as a Creditor of the Estate of Joseph F. Darlage, Deceased; and as Guardian Ad Litem of Christopher George Darlage and Elizabeth Jo Darlage, Sole Devisees of the Will of Joseph F. Darlage, Deceased (Cheryl) $125,000.00 plus 10% interest in an action involving a claim on a deceased partner's estate. We affirm.

## ISSUES

We restate the issues on appeal as:

1. Does the Uniform Partnership Act[1] (UPA) govern a partnership's winding up when one partner dies and his estate's resolution is pending in probate court?

2. Does a creditor of the decedent's estate, who is also representing the devisees under the decedent's will, have standing to pursue a claim against the decedent's surviving partner, who has failed to follow the statutory procedures required in winding up a partnership upon a partner's death?

3. Is it proper for a court to award damages instead of ordering an accounting or appointing a receiver under the UPA where all the partnership assets have been sold?

4. Was an exhibit correctly admitted into evidence where the opposing party's objection to its admission was only to a small portion of the overall exhibit; the exhibit's foundation was sufficient; and, the opponent's argument went only to the exhibit's weight?

5. Was there any accord and satisfaction between the decedent's estate and the surviving partner where the agreement purporting to be the accord and satisfaction executed between the surviving partner and the decedent's executrix was unfair and was not approved by the probate court?

6. Does the evidence in the record support the trial court's award of damages representing the decedent's interest in the partnership?

## FACTS

Cheryl Drummond and Joseph Darlage were married in August of 1974. They divorced in November of 1982. The disso-

1. IND. CODE § 23–4–1–1 et seq.

lution decree awarded custody of the couple's two children to Cheryl. Joseph was required to pay Cheryl certain sums for the property settlement and for child support.

Joseph entered into a partnership with his father, George Darlage, in January of 1975, thereby creating "Darlage Crane and Earthmoving Service" (partnership). The partnership was the partners' primary livelihood until Joseph's death. Joseph died in a car accident on April 16, 1983. His estate was opened on April 22, 1983, with Jane Speer, Joseph's sister, qualified as the executrix under Joseph's will. The will named Cheryl and Joseph's two children as the sole devisees. On April 22, 1983, the probate court granted Jane's petition to continue Joseph's portion of the business. An accounting was made of the assets and liabilities of the partnership as of April 30, 1983, to settle the amount with the surviving partner. Cheryl was appointed guardian ad litem of Cheryl and Joseph's children on May 25, 1983.

The partnership continued through the middle of December, 1983. The partnership mainly engaged in heavy crane and earth moving work. It also had a landfill service contract with the Jackson County Commissioners. Jane also worked for the business as bookkeeper. The business utilized a landfill owned by George and his wife Ethel. For many years until Joseph's death, and thereafter, the business paid $1,000.00 per month to use the landfill.

At trial, the deputy clerk of the Jackson Circuit Court testified that George had made no filings as required by the provisions of the Indiana Code governing accountings by surviving partners.[2] Partnership tax returns for the years 1981, 1982, and 1983 were introduced into evidence. The 1983 return was a final return. The returns for 1982 and 1983 reflected net losses; however, when depreciation was added back in, there was a positive cash flow. The real estate was not a partnership asset since it was held in the partners' individual names.

On December 19, 1983, George and Jane purported to settle the partnership ac-

counts. They exchanged a list showing most of the equipment and liens thereon. George paid the estate $14,487.63. On the same day, Jane as executrix paid George $14,937.50, for a claim he had filed against Joseph's estate. This claim was paid while the estate was insolvent and before Jane either allowed or disallowed the claim on the claims docket. On January 18, 1985, the probate court entered a judgment giving Cheryl a sum from the estate; this sum remains unpaid. At trial, Jane testified that all claims against the estate have been paid except Cheryl's.

Jeff Bush, C.P.A., testified at length as an expert for Cheryl. He valued Joseph's interest in the partnership as of his date of death, also explaining the basis for Bush's evaluation. He used an independent equipment appraisal in making his determination, as well as a study of the partnership's tax returns, accounting documents, and partnership financial statements given to the Jackson County Bank for loan purposes in 1982. A financial statement dated December 31, 1982, showed Joseph's interest to be approximately $139,881.00.

In October of 1984, George sold the landfill land and the landfill service contract to Rumpke of Indiana, Inc. (Rumpke). Cheryl's exhibit 9 consisted of closing documents to this sale, taken from Rumpke's files. William J. Rumpke authenticated and identified exhibit 9 as a true and accurate representation of the closing documents. The landfill services contract was valued at $100,000.00, and Mr. Rumpke testified that this was a reasonable value.

Using the $100,000.00 valuation and the other information provided in the partnership's records, including accounts receivable and accounts payable listings provided by Jane, Bush adjusted the accounts to arrive at an accurate value of the partnership. He determined that Joseph's interest in the partnership on his date of death was $90,061.17, which with eight percent per annum interest amounted to $138,126.67 as of December 31, 1989. Bush also commented that although the partnership capi-

---

**2.** IND.CODE § 23–4–3–1 et seq.

tal and draw accounts were poorly maintained, based on his analysis of the accounts and the dealings between Joseph and George, the best estimate was that the partnership was owned one-half by each partner. George presented no expert to contradict Bush's testimony.

Other relevant facts will be stated in our discussion of the issues.

### DISCUSSION AND DECISION

■■■ We first note that the trial court made findings of fact and conclusions of law *sua sponte.* Such *sua sponte* specific findings lead to appellate review under the general judgment standard. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App. 575 N.E.2d 663, 666. On appeal, a general judgment will be sustained upon any theory consistent with the evidence, and we will neither reweigh the evidence nor rejudge the witnesses' credibility. *Picadilly v. Colvin* (1988), Ind., 519 N.E.2d 1217, 1221. Even though the findings are *sua sponte,* the specific findings entered will not be set aside unless they are clearly erroneous, just as though a party had requested the findings be made under Ind. Trial Rule 52(A). *Vanderburgh,* at 666.

*Issue One*

[4] George first asserts that the probate code is applicable to this dispute, and the provisions of the UPA governing winding up and dissolution after a partner's death are inapplicable. We disagree.

■■■ We note that George states correctly that a more specific statute controls over a more general one, but only when the two conflict. *See Sanders v. State* (1984), Ind., 466 N.E.2d 424, 428. However, statutes relating to the same general subject matter are *in pari materia,* and should be construed together to produce a harmonious statutory scheme. *Id.* A more specific statute controls only where the two statutes are in irreconcilable conflict. *Id.* Further, a general statute does not overrule or supersede a specific statute unless the intent to do so is clear. *Sexton v. Johnson Suburban Utilities, Inc.* (1981),

Ind.App., 422 N.E.2d 1293, 1296, *trans. denied.* The statutes that George alleges to be in conflict are harmonious as applied to the dissolution of a partnership when a partner dies.

Both IND.CODE § 29-1-13-11 and IND. CODE § 23-4-3-1 et seq. provide that the surviving partner shall have the right and duty to wind up the partnership affairs on a partner's death. The probate code, under I.C. § 29-1-13-11, allows a court to permit a decedent's personal representative to continue the partnership's business. This language does not, however, permit or require the personal representative to wind up the partnership business, nor does this section in any way alter the two-year time limit specified in I.C. § 23-4-3-7 for settling the partnership's business and dividing any surplus of funds remaining in the partnership between the remaining partners and the deceased partner's estate. Indeed, we find that both statutes work together to promote the orderly winding up of a partnership and disposition of its assets, and the efficient settlement of a decedent's estate.

[8] Thus, the probate court's order of April 22, 1983, which authorized Jane to continue the operation of Joseph's portion of the partnership "so long as it may be necessary," is in complete harmony with the provisions of the UPA governing dissolution of a partnership upon a partner's death. Operating the partnership for "so long as it may be necessary" clearly encompasses the two years allowed under I.C. § 23-4-3-7 for the settling of a partnership following a partner's death. Contrary to George's contention, the two statutes may be read together easily to accomplish the statutory goal of an orderly and efficient disposition of a deceased partner's share in the partnership, and settlement of his estate and distribution to his heirs and creditors pursuant to the probate code. We find no reason to create a statutory conflict where none exists.

Moreover, even if we were to conclude that the two statutes at issue are in irreconcilable conflict, George has failed to

prove that the probate code's provisions are the more specific of the two. In short, the UPA, and specifically the Accounting by Surviving Partners Act,[3] provide steps specially tailored to a partnership's business upon the death of a partner. The probate code, however, provides only general guidance concerning the disposition of a decedent's entire estate. Were we to find that a conflict exists between the two statutes, the UPA would control, and our result would be identical.

*Issue Two*

██ Next, George disputes Cheryl's standing as a real party in interest to pursue a claim against him to recover Joseph's remaining interest in the partnership for Joseph's estate. We find that Cheryl has standing.

██ The issue of standing focuses on whether the complaining party is the proper person to invoke the court's power. *Schloss v. City of Indianapolis* (1990), Ind., 553 N.E.2d 1204, 1206. The standing requirement assures that litigation will be actively and vigorously contested. *Id.* A plaintiff must show a personal stake in the litigation's outcome and must show that he has sustained or is in immediate danger of sustaining a direct injury as a result of the defendant's conduct. *Id.* Cheryl has shown a personal stake in the outcome since she is a creditor of Joseph's estate, and because she is guardian ad litem of the devisees of Joseph's estate.

George has not contested the facts underlying either of these bases for standing, but asserts that any right to assert claims against him rests solely in the executrix of Joseph's estate, Jane. We disagree. Joseph died in April of 1983. The Accounting by Surviving Partners Act, I.C. § 23-4-3-7, requires surviving partners to settle the partnership business within two years of the inventory and appraisement deadline. Here, the record shows no accounting of partnership assets, nor has George complied with the other statutory requirements under the Accounting by Surviving Partners Act. Jane, in her capacity as executrix, has failed to assert the estate's claims to the partnership assets, or to safeguard other assets within the estate. She purported to settle Joseph's partnership business with George by paying George's claim against the estate when the estate was insolvent, and accepting a sorely inadequate sum as payment for Joseph's interest in the partnership. While IND. CODE § 23-4-1-42 and IND. CODE § 29-1-13-3 do provide for the deceased partner's estate to pursue claims against the continuing partner, these statutes in no way foreclose enforcement of the deceased partner's rights by other persons. The legislature could not have intended to prevent enforcement of such rights where, as here, the executrix has failed to act on behalf of the estate for many years, and enforcement remains doubtful.

We further note that the likelihood of Jane ever enforcing the estate's rights against her father is slim. In its judgment, the trial court observed that the transaction between Jane and George purporting to settle the partnership business between the partners was "poisonous" in its tendencies, even though no actual fraud could be shown. Record at 136. We agree. A delay of more than seven years after a partner's death with no filings and accountings by the surviving partner as required by statute, an executrix who has failed to enforce actively the deceased partner's rights against the surviving partner, and the familial relationship between the executrix and the surviving partner make any real resolution of the partnership business at any time in the future dubious at best. Cheryl, as a creditor of the estate and as the guardian of the estate's devisees, not only has standing to assert this claim, but is the only one affected thereby who is willing to assert such a claim. We find that Cheryl has standing.

*Issue Three*

██ George next claims that an accounting and the appointment of a receiver are the only remedies available in this action. We find that other remedies are also available.

3. IND.CODE § 23-4-3-7.

While it is true that IND. CODE § 23–4–3–5 requires the appointment of a receiver when a partner fails to comply with the surviving partner's responsibilities, this section does not foreclose any other remedies that equity requires. An action for an accounting and the appointment of a receiver is a suit in equity. *Watson v. Watson* (1952), 231 Ind. 385, 393, 108 N.E.2d 893, 897. A party will not be forced to pursue a legal remedy that is not practical or efficient. *Jackson v. Farmers State Bank* (1985), Ind.App., 481 N.E.2d 395, 408, *trans. denied.* Equity should not and will not require the performance of a useless formality. *Merchants National Bank and Trust Co. v. H.L.C. Enterprises, Inc.* (1982), Ind.App., 441 N.E.2d 509, 514. Ordering an accounting or the appointment of a receiver in this case would be futile since the business assets have already been sold and the proceeds collected by the surviving partner. Pursuing such remedies, while specified by statute, would be neither practical nor efficient, and would result in a needless formality affording no real relief to the plaintiff.

When an accounting is requested, a court in equity has discretion to order money damages. *Kisling v. Barrett* (1904), 34 Ind.App. 304, 309–310, 71 N.E. 507, 508–509. Two of the cases upon which George relies support this conclusion. In *Yanakeff v. George* (1934), 207 Ind. 703, 194 N.E. 329, the court reasoned that a receiver need not be appointed when there are no assets to be administered, or in any other case in which "no good would be accomplished by the appointment." *Id.* at 705, 194 N.E. at 330. Since the partnership assets have been sold, there are no assets to administer, and the appointment of a receiver would be pointless. *See Moorman v. Moorman* (1948), 226 Ind. 192, 194–195, 79 N.E.2d 112, 113. Thus, the trial court properly awarded damages since no business assets exist for a receiver to administer, and a previous purported accounting between the surviving partner and the executrix of the deceased partner's estate was inaccurate.

*Issue Four*

George asserts that Cheryl's exhibit 9 was erroneously admitted into evidence. We disagree.

An error in the admission of evidence is not reversible when it does not prejudice the complaining party's rights. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749, 754. Moreover, the admissibility of evidence is within the sound discretion of the trial court. *Eversole v. Consolidated Rail Corp.* (1990), Ind.App., 551 N.E.2d 846, 854. A reversal is warranted only when the trial court has abused its discretion and its action is clearly erroneous and against the facts and circumstances before the trial court and reasonable inferences drawn therefrom. *Id.*

Exhibits that are not identified sufficiently are not admissible in evidence. *D.H. v. J.H.* (1981), Ind.App., 418 N.E.2d 286, 293. Several witnesses called at trial identified the documents contained in exhibit 9 as those relating to the sale of the landfill. George's objections were only to a small portion of the exhibit, and did not encompass the contract in issue. The parts to which he objected did not affect the partnership assets' evaluation, and thus cannot be prejudicial to him. Similarly, the foundational deficiencies which George allege go only to a fraction of the overall exhibit, and do not affect an integral part of the landfill contract. We also note that the trial judge admitted exhibit 9 subject to George's objection, stating that George's testimony offered to support his objection affected only the weight to be given the exhibit, and not its admissibility. Record at 345. In short, we do not find that the trial court abused its discretion in the admission of Cheryl's exhibit 9, and even if we had found that the disputed portions were improperly admitted, their admission would not prejudice George.

George also raises a violation of the original document rule in the exhibit's admission. To preserve an error for review on appeal, a proper objection must be made when the evidence is offered for admission; the *specific objection* relied

upon on appeal must have been stated in the trial court as the basis for the objection. *Bryant v. State ex rel. Van Natta* (1980), Ind.App., 405 N.E.2d 583, 584 (emphasis in original). George objected to the admission of exhibit 9 based on foundation. The record does not show that he at any time asserted the original document rule as a basis for the foundational objection. He has therefore waived this objection on appeal.

Because we have determined that Cheryl's exhibit 9 is admissible, we find that Cheryl's expert's reliance on the exhibit in making his assessment of the partnership assets was proper. Thus, his testimony, relying on a properly admitted exhibit, testimony of the parties to the contract, and his independent evaluation of the pertinent documents, was admissible.

*Issue Five*

■ George claims that there was binding accord, satisfaction, and settlement between himself and Joseph's estate as a matter of law. We find that no such settlement occurred.

We first note that George bears the burden of proving this affirmative defense. Ind. Trial Rule 8(C); *See Daube and Cord v. LaPorte County Farm Bureau* (1983), Ind.App., 454 N.E.2d 891, 894. He has not sustained this burden.

IND. CODE § 29–1–13–5 and *Kroslack v. Estate of Kroslack* (1987), Ind., 504 N.E.2d 1024, show that George has not proven a valid accord and satisfaction. The probate code specifies the procedure to be used when settling a decedent's estate. In part, it provides that an executrix may make compromises with any of the estate's debtors, if such action is in the "best interest" of the estate, and "on court order." I.C. § 29–1–13–5. Any settlement must be "fair and reasonable." *Id.* The record shows that the purported settlement between George and Joseph's estate, through Jane, was neither in the best interest of the estate, nor on court order. Jane paid George's claim against the estate when the estate was insolvent, and prior to any order by the court sanctioning such payment. As such, it cannot be characterized as fair

or reasonable, and is in direct violation of the statute. Any payment made in violation of I.C. § 29–1–13–5 is not binding on the estate. *Id.*

■ An estate's personal representative may compromise claims against the estate, but the compromise must be fair, reasonable, and in the best interest of the estate. *Kroslack v. Estate of Kroslack* (1987), Ind., 504 N.E.2d 1024, 1026. In *Kroslack,* a son who was appointed executor of his father's estate acted in bad faith in effecting a compromise and settlement on behalf of the estate. *Id.* at 1027. The court reasoned that when a personal representative acts in bad faith and not in the estate's best interest, any compromise and settlement of a claim is not binding, even if approved by the probate court. Like the executor in *Kroslack,* Jane's purported settlement with George was for an inadequate sum, and thus in bad faith. The settlement was also paid out of the estate when it was insolvent, thereby negating any possibility that such payment was in the best interest of the estate. Unlike the executor in *Kroslack,* Jane did not even attempt to obtain the probate's court approval, and therefore, was in violation of I.C. § 29–1–13–5. Thus, this case militates more strongly in favor of annulling the settlement Jane made with George. We cannot condone an alleged settlement that violates the probate code. Therefore, we find that George fails to prove accord and satisfaction.

*Issue Six*

■ Finally, George claims that the evidence in the record does not support the court's award of damages for Joseph's interest in the partnership. We find the evidence sufficient to support the trial court's judgment.

■ On appeal, it is presumed that general judgments are based on findings that are supported by the evidence, and will be affirmed if the trial court's decision is sustainable on any legal theory that is supported by the evidence. *Greensburg Local No. 761 v. Robbins* (1990), Ind.App., 549 N.E.2d 79, 80, *trans. denied.* When re-

viewing a claim of insufficient evidence, we will neither reweigh the evidence nor judge the witnesses' credibility; rather, we view only the evidence that supports the judgment, and will uphold the verdict if it is supported by substantial evidence of probative value establishing the claim. *Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778, 782. The fact-finder's determination may not be based on mere speculation or conjecture. *Lewis v. State* (1989), Ind.App., 535 N.E.2d 556, 559.

Ample evidence exists in the record to support the court's finding of the value of Joseph's share in the partnership business. Several witnesses testified regarding the value of the various partnership assets and George presented no expert to contradict their testimony. Although the testimony varied slightly regarding the date of valuation, any difference in value between the April 16, 1983 and April 30, 1983 dates was mere fine tuning. George has not shown that consistent use of the April 30, 1983 valuation date would make a difference in the damage computation, nor did he object at trial to the repeated use of April 30, 1983 as the date for valuation. In short, George cannot now complain that an improper date of valuation was used, since he acquiesced in the date's use.

Our standard of review gives great deference to the trial court's determinations, and George has not shown them to be in error.

Affirmed.

BAKER and BUCHANAN, JJ., concur.