Joseph M. **KLEBES** and Patricia
Klebes, Appellant–Plaintiffs,

v.

**FOREST LAKE CORPORATION,** An
Indiana Corporation, Charles Rehn,
Richard Billings, Diane Billings, Paul
Schmalz, Pat Schmalz, Sue Lollar, Robert Lollar, Tania Doran, Charles James,
Lita James, and Charles L. Falvey, Appellee–Defendants.

No. 32A01–9206–CV–167.

Court of Appeals of Indiana,
First District.

Jan. 28, 1993.

Rehearing Denied March 22, 1993.

---

ing Forest Lake in the Forest Lake subdivision, and are members of the Forest Lake Corporation (we will collectively refer to Forest Lake Corporation and the individual defendants as the Corporation). Plaintiff-appellants Joseph and Patricia Klebes own a house on the west end of Forest Lake adjacent to the Forest Lake subdivision.

Even though their property was situated outside the Forest Lake subdivision, the Klebeses sued the Corporation claiming (1) they should be considered members of the Corporation, and (2) the Corporation breached a contractual duty to remove silt which had accumulated in the lake abutting the Klebeses' property. In response, the Corporation first asserted, *inter alia*, that the Klebeses had no claims against it because the Klebeses were not members of the Corporation and second, filed a counterclaim for attorney fees arguing the Klebeses' lawsuit was frivolous. The case was set for bench trial to be held on June 11, 1991.

The two parties engaged in extensive settlement negotiations, which we will recount below in detail. On June 6, 1991, after the Klebeses' attorney advised the court that the case had been settled, the court cancelled the trial scheduled for the next week. *Record* at 9. Two months later, however, the Klebeses filed a *pro se* notice advising the court the case had not been settled.

The Corporation disagreed, and on October 25, 1991, it filed a motion seeking to enforce the settlement agreement it believed it had reached and to impose sanctions. Following a hearing, the court found the parties had amicably settled their lawsuit and granted the Corporation's motion. The court awarded the Corporation $10,000.00 pursuant to the settlement agreement and $8,447.03 for attorney fees the Corporation incurred after the settlement agreement was reached.

The Klebeses appeal that judgment and raise three issues for our review, which we consolidate and restate as:

I. Whether sufficient evidence supports the trial court's judgment that the parties

Frank E. Spencer, James C. Spencer, Indianapolis, for appellant-plaintiffs.

George W. Hopper, Mark R. Galliher, Hopper, Wenzel & Galliher, Indianapolis, for appellee-defendants.

BAKER, Judge.

Today we descend into the supposedly tranquil waters of settlement agreements in an effort to explore and clarify the effect and enforceability of these agreements.[1] Our descent is occasioned by the apparent settlement of a nuisance action involving a private lake situated upon real estate owned by defendant-appellee Forest Lake Corporation, a not-for-profit corporation formed to maintain and control Forest Lake for the benefit of homeowners in the Forest Lake subdivision. The individual defendant-appellees, Dr. Charles Rehn, Richard and Diane Billings, Paul and Pat Schmalz, Robert and Sue Lollar, Tania Doran, Dr. Charles and Lita James, and Charles L. Falvey, all own homes surround-

---

1. Oral argument was held in Indianapolis on January 11, 1993.

had entered into a complete and final settlement agreement.

II.   Whether the trial court erred in awarding attorney fees to the Corporation.

The Corporation raises a third issue, which we restate as:

III.   Whether the Corporation is entitled to recover appellate attorney fees from the Klebeses pursuant to Ind. Appellate Rule 15(G).

### Statement of Facts

At the outset, we note our recitation of the facts is sprinkled with references to Forest Lake, silt, and real estate. We have included this background information in order to clarify the genesis of the action; we emphasize, however, that this appeal is primarily about settlements. With this in mind, the facts most favorable to the judgment follow.

The Klebeses' original complaint was prepared and filed by their attorney Danny Meek, who represented the Klebeses until his withdrawal as counsel on March 22, 1991. Shortly thereafter, the Klebeses retained attorney William Harrington. On several occasions during May of 1991, Harrington discussed various settlement proposals with the Corporation's attorneys.

On June 4, 1991, Harrington offered to settle the Klebeses' claims and the Corporation's counterclaim during a telephone conversation with Mark Galliher, an attorney for the Corporation. Later that day, Galliher confirmed by letter that the settlement offer included the following terms:

1.   The Klebeses' amended complaint and the Corporation's counterclaim would be dismissed with prejudice;
2.   The Klebeses would execute a release of all claims against the Corporation;
3.   The Klebeses would pay $10,000.00 to the Corporation; and
4.   The Klebeses would discontinue their request to be admitted as members of the Corporation.

*Record* at 422, 457.

At the hearing on the Corporation's motion to enforce the settlement agreement,

Harrington testified the Klebeses had authorized him to settle the case on these terms. Harrington memorialized this authorization in his June 4, 1991 letter to the Klebeses, which stated, in pertinent part:

This letter confirms our last telephone conversation this afternoon. At the conclusion of that conversation, you authorized us to make a settlement offer to the defendants on the following terms:

1.   You pay $10,000.00 toward the defendants' attorney fees; and

2.   Both parties agree to a joint stipulation of dismissal with prejudice.

Shortly after speaking with you, I conveyed that offer to Mark Galliher. Mark assured me that he would convey our offer to George Hopper [counsel for the Corporation] so that George could speak with the defendants about that offer tonight.

Also at the conclusion of our last conversation today, I informed you that if this settlement proposal is not accepted, we will withdraw from this case. You then indicated that, in that case, you would represent yourself at next week's trial. I informed you that I felt it was not in your best interest to proceed to trial, particularly without counsel.

The Klebeses concede they authorized Harrington to settle under the terms of the June 4, 1991 letter. They contend, however, that they did so with the stipulation that "all parties would resolve the disputes." *Record* at 444, 445. On the basis of this stipulation, the Klebeses argue the settlement agreement should have included provisions for (1) their membership in the Corporation, and (2) the removal of silt from the lake abutting their property.

On June 5, 1991, Hopper orally accepted the Klebeses' settlement offer during a telephone conversation with Harrington. This agreement was memorialized in a letter sent later that day from Hopper to Harrington, which stated, in pertinent part:

To confirm our telephone conversation of this afternoon, I wish to confirm that my clients have authorized me to accept your

clients' settlement offer. Specifically, I understand that our clients have mutually agreed to a full and complete settlement of any and all claims upon the following terms and conditions:

(a) Mr. and Mrs. Klebes will pay to the defendants the sum of $10,000.00;

(b) the parties agree to file a stipulation with the court setting forth that the parties have reached a full and complete settlement of any and all claims and that the court should enter an order dismissing the amended complaint and the counterclaim, with prejudice;

(c) Mr. and Mrs. Klebes will execute a release of any and all claims, whether known or unknown, which have been or could have been asserted in the above referenced action or otherwise concern the subject matter of the above referenced action.

Finally, it is my understanding that the parties have agreed to settle any and all disputes between them concerning Forest Lake, the Forest Lake Corporation, and its members. As we discussed, I will be preparing draft settlement documents for your review and approval.

The court cancelled the June 11, 1991 trial after Harrington advised the court on June 6, 1991, that the Klebeses' lawsuit had been settled. *Record* at 9. Thereafter, when the Klebeses received the settlement documentation, they refused to execute the agreement. Instead, Alvin Katzman, the Klebeses' third attorney, contacted Hopper and suggested an "addition" to the Klebeses' settlement offer under which the Klebeses would pay an additional $5000.00 to dredge the Klebeses' portion of the lake; in return, the Klebeses wished to become members of the Corporation. Katzman also proposed changing the language of the release clause so that the claims being released by the Klebeses included only presently existing claims, not future ones.

After receiving the Klebeses' proposal, Hopper responded by letter dated June 24, 1991, as follows:

Thank you for your letter of June 19, 1991. As you requested, I forwarded your letter containing your clients' new offer to settle the case to my clients for their consideration and response. Nevertheless, I wanted to clarify that your clients previously made a settlement offer which was accepted by my clients. For some reason, your clients have elected not to execute the settlement documents and proceed forward to consummate the settlement. Instead, your clients now wish to supplement the previously accepted settlement offer and have retained you as their new attorney. Obviously, the actions of your clients following acceptance of their offer of settlement forces my clients to incur additional attorney fees and expenses which my clients believe should be justly born by Mr. and Mrs. Klebes.

After sending this letter, Hopper spoke to Katzman and Hopper orally agreed to the changes in the releases concerning the presently existing and future claims language.

Whether the Klebeses thought no agreement existed or whether they simply did not like the agreement Harrington and Hopper reached is unclear, but in any event the Klebeses refused to abide by any agreements reached between their attorneys and the Corporation's attorneys. In an attempt to finalize the litigation which the Corporation believed to be frivolous, the Corporation moved for summary judgment on the Klebeses' complaint and on its counterclaim. In reply, the Klebeses filed a *pro se* response opposing the Corporation's motion; additionally, although protected by the attorney-client privilege, they produced Harrington's June 4th letter to the Klebeses memorializing in detail their authorization to settle. Based on this letter and others, the Corporation then filed a motion to enforce the settlement agreement. At the trial on this issue, the Corporation persuaded the trial court that the parties had reached a binding settlement agreement. The trial court entered the following judgment:

Defendants' motion to enforce settlement is granted. Accordingly, defendants shall have a judgment against plaintiffs

for $10,000.00 and plaintiffs' complaint and defendants' counterclaim are dismissed.

Defendants' motion for attorney fees as a result of plaintiffs pursuing litigation after settlement agreement was reached is granted. The Court finds that defendants should recover attorney fees in the amount of $8,447.03. Defendants are granted a judgment against plaintiffs in the amount of $8,447.03.

Total judgment entered in favor of defendants and against plaintiffs is $18,447.03.

The Klebeses challenge this judgment and the Corporation seeks appellate attorney fees for prosecution of this appeal.

### Discussion and Decision

### I. SETTLEMENT AGREEMENT

#### A. Standard of Review

The judgment the Klebeses received concerning the validity of the settlement agreement was both adverse and general. Accordingly, our standard of review is limited. When the trial court makes no findings of fact, we presume the judgment is based on findings supported by the evidence. *Greensburg Local No. 761 v. Robbins* (1990), Ind.App., 549 N.E.2d 79, 80, *trans. denied.* We must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence. *Abels v. Monroe County Education Ass'n* (1990), Ind.App., 489 N.E.2d 533, 540, *cert. denied,* 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518. When making this determination, we do not reweigh the evidence or assess the credibility of witnesses. Instead, we consider only the evidence most favorable to the judgment together with all reasonable inferences drawn therefrom. *Id.* Bearing these standards in mind, we now address the propriety of the adverse judgment the Klebeses suffered.

#### B. Sufficiency of the Evidence

The Klebeses argue the evidence is insufficient to support the trial court's enforcement of the settlement agreement, claiming they did not authorize Harrington to settle with the Corporation unless both parties agreed to "resolve all disputes." They maintain that "all disputes" would not be resolved until the Corporation both accepted them as members of the Corporation and removed the silt from the lake along their property.

The judicial policy of Indiana strongly favors settlement agreements. *Germania v. Thermasol, Ltd.* (1991), Ind. App., 569 N.E.2d 730, 732. Although a client has full authority over the decision whether to settle the case or proceed to trial, Ind. Professional Conduct Rule 1.2, attorneys act as agents of their clients and may enter enforceable settlement agreements on their behalf if they first secure their client's consent to do so. *Mid–States Aircraft Engines v. Mize Co.* (1984), Ind. App., 467 N.E.2d 1242, 1248; *Miedreich v. Rank* (1907), Ind.App., 40 Ind.App. 393, 82 N.E. 117.

It is well-settled that in the absence of fraud or mistake a settlement is as binding and conclusive of the parties' rights and obligations as a judgment on the merits. *Burke v. Middlesworth* (1930), 92 Ind.App. 394, 174 N.E. 432. If a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement from the court before which the action is pending. *Brant Const. Co. v. Lumen Const. Co.* (1988), Ind.App., 515 N.E.2d 868, 876, *trans. denied.* Whether a client has consented to particular terms is a factual matter to be determined by the fact-finder. *See id.*

The record supports the trial court's finding that the Klebeses' attorney transmitted a clear and unambiguous settlement offer which was accepted by the Corporation. There is no allegation of fraud or mistake. Harrington, acting pursuant to the Klebeses' instructions, proposed a settlement on their behalf in a letter to Hopper which Hopper subsequently accepted during a telephone conversation with Harrington. This evidence supports the trial court's conclusion that the parties reached a binding settlement agreement. *See Indiana Farmers Mutual Insurance*

*Company v. Walters et al.* (1943), 221 Ind. 642, 50 N.E.2d 868 (a compromise agreement is not required to be in writing). Moreover, in addition to the oral agreement, Hopper memorialized the agreement in his follow-up letter to Harrington. The fact that the Klebeses never signed the settlement documents is of no moment because it is undisputed that Harrington acted as the Klebeses' agent when he settled the case according to the terms previously approved by the Klebeses. *See Black v. Krauss* (1949), 119 Ind.App. 529, 85 N.E.2d 647, *trans. denied.*

The Klebeses' contend the evidence mandates the conclusion that their authorization specifically required that the parties "resolve all disputes," including their requests for membership in the Corporation and clean-up of the lake. Although the Klebeses testified as to their intent, the trial court was not required to accept their testimony as credible. Instead, the record unambiguously supports the trial court's conclusion that a settlement agreement was reached, and further supports the trial court's conclusion that the Klebeses have released all other existing claims.[2] Although the Klebeses invite us to assess witness credibility by accepting their position, and thus disregard Harrington's testimony, we decline this invitation and remind the Klebeses that the determination of witness credibility is a matter reserved for the trial court. *See Abels, supra.* The trial court's judgment was sufficiently supported by the evidence.

C. Effect of Settlement Agreement

Next, the Klebeses argue that even if Harrington had the authority to complete the settlement agreement, the agreement is not binding because it was not filed with the clerk or entered into the minutes of the court pursuant to IND.CODE 34–1–60–5.[3] The Klebeses, however, failed to raise this defense at the trial court level and may not do so for the first time on appeal.[4] *W & W Equipment Co., Inc. v. Mink* (1991), Ind. App., 568 N.E.2d 564, 576, *trans. denied.*

## II. ATTORNEY FEES

■ The trial court awarded the Corporation $8,447.03 for attorney fees, finding that the Klebeses had unreasonably pursued litigation after a settlement agreement had been reached. Generally, a prevailing party is not entitled to recover attorney's fees absent statutory authority or prior agreement. *Indiana & Michigan Electric Co. v. Terre Haute Industries, Inc.* (1987), Ind.App., 507 N.E.2d 588, 603, *trans. denied.* IND.CODE 34–1–32–1(b) authorizes the court to award attorney's fees in any civil action as part of the costs to the prevailing party, if it finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

In reviewing a trial court's decision to award attorney fees under this statute, we are presented with mixed questions of fact and law. We review the trial court's factual findings under the clearly erroneous standard, and we review the trial court's legal conclusion that a party's conduct violated I.C. 34–1–32–1 *de novo. In re Duke* (1990), Ind.App., 552 N.E.2d 504, 505, *trans. denied.*

■ The record supports the trial court's conclusion that the Klebeses authorized Harrington to settle the case on their behalf. Thereafter, although Harrington set-

2. We note the Corporation agreed to the modification in the releases concerning the future and presently existing claims and does not now challenge its validity.

3. IND.CODE 34–1–60–5 provides in pertinent part:
An attorney has authority, until discharged or superseded by another,

(1) To bind his client in an action or special proceeding, by his agreement, filed with the clerk, or entered upon the minutes of the court, and not otherwise.

4. We observe that even if this argument was not waived, IND.CODE 34–1–60–5 was satisfied by the June 6, 1991 entry in the trial court's minutes confirming the parties' settlement.

tled the case according to the terms proposed by the Klebeses, the Klebeses refused to honor the agreement. Instead, two months after Harrington informed the court that a settlement had been reached, the Klebeses reneged on the agreement and hired Katzman to negotiate a "supplement" to the settlement agreement. When Katzman approached the Corporation concerning the Klebeses' proposal, Hopper reiterated that the case had already been settled and warned Katzman that any additional work Hopper performed in this matter was properly chargeable to the Klebeses. Under these facts, we find the trial court correctly determined that the Klebeses violated I.C. 34–1–32–1(b)(2) by unreasonably and groundlessly continuing the litigation two months after settlement was reached. *See United Farm Bureau Mut. Ins. Co. v. Ira* (1991), Ind.App., 577 N.E.2d 588, 597, *trans. denied.* Accordingly, the award of attorney fees was proper under the statute.

### III. APPELLATE ATTORNEY FEES

The Corporation requests appellate attorney fees for the Klebeses' malicious and bad faith pursuit of this appeal. The Corporation cites the following as examples of the Klebeses' malice and bad faith:

1. The Klebeses' continuation of the litigation after a settlement had been reached.

2. A letter written by the Klebeses wherein they refer to two of their defendant-neighbors as "goat-face" and "kitchen-man."

Ind. Appellate Rule 15(G) provides: If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten percent (10%) upon the judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution. An award of damages under this statute is discretionary and may be ordered when an appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Orr v. Turco Mfg. Co. Inc.* (1987), Ind., 512 N.E.2d 151, 152. Our

supreme court, however, has cautioned that appellate attorney fees should be awarded only when the arguments are "utterly devoid of all plausibility." *Id.* An appeal of an award of trial fees and costs will not automatically give rise to an award of appellate attorney fees. *Tipton v. Roerig* (1991), Ind.App., 581 N.E.2d 1279, 1285.

Although the Klebeses' argument that they never agreed to the terms of the settlement was unpersuasive, we cannot say their appeal is "permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay" or is so "utterly devoid of all plausibility" that punitive sanctions are justified. Next, we note the Klebeses wrote the letter containing the terms "goat-face" and "kitchen-man" while the case was still pending at the trial court, not during the appellate process, and thus it is inapplicable to our consideration of the merits of the Klebeses' appeal. Moreover, as to the Klebeses' resort to name-calling, we find no authority supporting the award of attorney fees on the basis of one party's barrage of insults. Were we to conclude otherwise, an award of attorney fees would be mandated in far too many instances of litigation. In any event, although we admit the term "goat-face" carries an unattractive connotation, we are unconvinced that "kitchen-man" is necessarily insulting. In fact, in our society of dual-roles and changing norms, being referred to as a "man of the kitchen" may actually be a compliment, notwithstanding the Klebeses' pejorative intent. As a result, we decline to exercise our discretion to award additional attorney fees.

We affirm the trial court and its award of attorney fees, but decline to award further sanctions.

ROBERTSON and NAJAM, JJ., concur.