**Ernest N. SCOTT, Ivan L. Scott, Janet (Scott) Oberlander and Jeanne D. Scott, Appellants–Respondents,**

**v.**

**Elva RANDLE, Executrix of the Estate of Edna P. Sager, Ralph L. Scott and Lafayette Bank and Trust Company of Lafayette, Indiana, Appellees–Petitioners.**

No. 09A02–9912–CV–866.

Court of Appeals of Indiana.

Oct. 11, 2000.

---

Jim Brugh, Logansport, Indiana, Attorney for Appellant.

Barry T. Emerson, Emerson & Manahan, Delphi, Indiana, James V. McGlone, Deborah B. Trice, Stuart & Branigin, Lafayette, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Ernest N. Scott, Ivan L. Scott, Janet (Scott) Oberlander, and Jeanne D. Scott (collectively, "the Scott parties") appeal the trial court's award of attorney fees to Elva Randle, in her individual capacity and in her capacity as executrix of the estate of

Edna P. Sager, and Ralph L. Scott (collectively, "the Randle parties"). The Scott parties raise six issues, which we consolidate and restate as:

1) whether the trial court erred when it awarded attorney fees to the Randle parties on grounds that the Scott parties engaged in frivolous, unreasonable, groundless and bad faith conduct by refusing to sign a settlement agreement;

2) whether the trial court erred when it awarded attorney fees directly to the Randle parties despite the fact that the Randle parties had a contingent fee agreement with their attorneys;

3) whether the trial court erred when it ordered the Scott parties to pay to the Randle parties one-half of the attorney fees, administrative fees, and expenses that were incurred by Lafayette Bank and Trust Company ("the Bank"), who was a trustee in this case, while the parties litigated the validity of the settlement agreement; and

4) whether the trial court abused its discretion in the course of calculating the attorney fee award.

We affirm.

The relevant facts follow. This case arises out of a dispute among family members over the estate and trust of Edna Sager. Ernest Scott and Elva Randle are siblings, and Sager was their aunt. Jeanne Scott is Ernest's wife, and Ivan Scott, Janet Oberlander, and Ralph Scott are Ernest's children. This case has been before this court previously, and we discussed the facts therein as follows:

In 1979, Edna Sager executed a will giving her husband Clarence a life estate in her undivided interest in 440 acres owned by them as tenants in common, with a remainder to her niece Elva Randle. Clarence's will contained a like provision. If Edna survived Clarence, all her remaining assets would go to Elva. Clarence died before 1984.

In 1984, Edna executed a will and trust agreement. Elva took nothing under the provisions of the second will and the trust. Edna died in December 1989. The first will, benefiting Elva and Ralph, was admitted to probate in Carroll County Circuit Court, and the second will and trust agreement, benefiting the [Scott parties], was admitted to probate in Tippecanoe Circuit Court. Both wills were subsequently challenged [by the Scott parties, the Randle parties, and the Bank, which was the trustee for Edna's estate pursuant to the 1984 will and trust agreement], and the actions [were] eventually consolidated in the Cass Circuit Court on April 14, 1993.

*Scott v. Randle*, 697 N.E.2d 60, 62–63 (Ind. Ct.App.1998) ("*Scott I*"), *reh'g denied*, *trans. denied*, 706 N.E.2d 177. On April 22, 1994, several days prior to trial on the parties' claims, the Bank filed a motion to set aside the trial date on grounds that the case had been settled. The motion was accompanied by a copy of the settlement agreement, which had been signed by counsel for all of the parties. The Scott parties' attorney, Eric Allen, repeatedly sought to obtain the signatures of his clients on the agreement, but they refused to sign.

On August 5, 1994, the Randle parties filed a motion to enforce the settlement agreement. The Scott parties obtained new counsel, and on December 12, 1994, they filed a motion to set aside the settlement agreement on grounds that Allen had acted without their consent when he signed the agreement on their behalf.

On June 12, 1995, the Randle parties petitioned the trial court to award attorney fees and expenses to them for the costs they incurred while prosecuting the motion to enforce the agreement, asserting that the Scott parties' refusal to sign the settlement agreement was frivolous and in bad faith. After hearings, the trial court granted the Randle parties' motion to enforce the settlement agreement on June 13, 1996. The Scott parties appealed that

ruling, and we affirmed the trial court's judgment.[1] *See Scott I,* 697 N.E.2d at 70. On February 26, 1999, after a hearing, the trial court granted the Randle parties' motion for attorney fees and expenses. The trial court determined that the Scott parties would be jointly and severally liable for $76,398.52 in attorney fees and costs, which included one-half of the Bank's attorney fees, administrative fees, and expenses that were incurred after the settlement agreement was signed in April, 1994.

## I.

The first issue is whether the trial court erred when it awarded attorney fees to the Randle parties on grounds that the Scott parties engaged in frivolous, unreasonable, groundless, and bad faith conduct by refusing to sign the settlement agreement. The Scott parties contend that there is no factual basis to support the trial court's findings that the Scott parties acted in bad faith when they refused to sign the settlement agreement and that they pursued a frivolous, unreasonable, and baseless claim when they sought to set aside the settlement agreement. The Scott parties also assert that there is no factual basis to support the trial court's conclusion that they all participated in the bad faith conduct and should be held jointly and severally liable. We will address each point in turn.

■■■ Generally, litigants must pay their own attorney fees. *Kintzele v. Przybylinski,* 670 N.E.2d 101, 102 (Ind.Ct.App. 1996). Thus, attorney fees are not allowable in the absence of a statute, agreement, or stipulation authorizing such an award. *United Farm Bureau Mut. Ins. Co. v. Ira,* 577 N.E.2d 588, 597 (Ind.Ct. App.1991), *trans. denied.* In Indiana, the award of attorney fees in cases of frivolous, unreasonable, or groundless claims or defenses is governed by Ind.Code § 34–52–1–1,[2] which provides, in relevant part:

> (a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.
>
> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3) litigated the action in bad faith.

Pursuant to this statute, a court may award attorney's fees upon a finding of any one of these elements. *Kintzele,* 670 N.E.2d at 102.

■■■ Because Ind.Code § 34–1–32–1 is identical to Ind.Code § 34–52–1–1, we conclude that the standard of review applicable to the former statute is also applicable to the latter. This standard involves several steps. "First, we review the trial court's findings of fact under the clearly erroneous standard and second, we review de novo the trial court's legal conclusions. Finally, we review the trial court's decision to award attorney fees and the amount thereof under an abuse of discretion standard." *St. Mary Med. Ctr. v. Baker,* 611 N.E.2d 135, 137 (Ind.Ct.App.1993), *reh'g denied, trans. denied.* In examining the findings of fact we neither reweigh the evidence nor judge witness credibility; rather, we view only that evidence and the

---

**1.** In that opinion, we noted that the Scott parties argued that the trial court erred by failing to enter findings on the Randle parties' motion for attorney fees. *See Scott I,* 697 N.E.2d at 69. We found that argument to be without merit because the trial court had bifurcated the issues of the settlement agreement and the attorney fees, and "the court simply [had] yet to rule upon" the attorney fees motion. *Id.*

**2.** The previous version of this statute, Ind. Code § 34–1–32–1, was in effect during most of this litigation. Ind.Code § 34–1–32–1 (repealed 1998). The two statutes are identical.

reasonable inferences to be drawn therefrom which support the trial court's findings and decision. *Kahn v. Cundiff,* 533 N.E.2d 164, 168 (Ind.Ct.App.1989), *aff'd,* 543 N.E.2d 627. In reviewing legal conclusions under the clearly erroneous standard we will not reverse unless we are left with a definite and firm conviction that a mistake has been made. *Id.*

### A.

■ The Scott parties assert that there is insufficient evidence to support the trial court's findings that they acted in bad faith. Here, after analyzing Ind.Code § 34–52–1–1(b), the trial court found that the Scott parties "frivolously, unreasonably, groundlessly or in bad faith refused to consummate the settlement agreement herein," and that the Scott parties "frivolously, unreasonably, groundlessly and in bad faith continued to litigate through the denial of their Motion to Correct Errors the issue of whether a settlement had been reached." Record, p. 506. We infer from these findings that the trial court determined that the Scott parties had violated Ind.Code § 34–52–1–1(b)(3) by refusing to sign the settlement agreement in bad faith and that they had violated Ind.Code § 34–52–1–1(b)(2) by frivolously, unreasonably, and groundlessly litigating whether a settlement had been reached by means of their motion to correct errors.

There is evidence in the record to support the trial court's determination in regards to bad faith. In a letter to his first attorney, Eric Allen, dated April 20, 1994, Ernest Scott expressed a deep dislike of the Randle parties and their attorneys:

You know me if any way I can get even with [counsel for the Randle parties] when this is over I will. Also any way I can cause [counsel for the Randle par-

ties] with problem to get paid for what they do. I want to make them do more work to cost Elva and Ralph more money or in plain words make Elva and Ralph pay more to their lawyer as well make them work for what they get.

Supp. Record, p. 374.[3] In addition, on April 24, 1994, Ernest Scott wrote a letter to Judge Joe Carey of the Carroll County Circuit Court in which he asked Judge Carey to "help me in anyway or make Elva Randle and [her attorneys] work hard to earn it if possible." Supp. Record, pp. 1288–1289. He concluded the letter by urging Judge Carey, "[p]lease don't let anyone know I wrote this to you. Destroy it." Supp. Record, p. 1289. Ernest also wrote to Ivan Scott and Janet Oberlander on May 10, 1994, stating that the Randle parties and their attorneys were "[a]ll dishonest" and that "I will not now leave [them] off [the] hook." Supp. Record, p. 1289. On May 27, 1994, Eric Allen wrote to Ernest and asked him to sign the settlement agreement. Ernest replied in a letter dated June 1, 1994, that he "may have to study what [Elva Randle and Ralph Scott] have to do to me for what they have done." Supp. Record, p. 1332. These writings support the trial court's findings that the Scott parties intended to harass the Randle parties and acted in bad faith by failing to sign the settlement agreement. *See McDonald v. McDonald,* 631 N.E.2d 522, 524 (Ind.Ct.App.1994) (determining that a daughter-in-law was entitled to attorney fees where the evidence showed that her mother-in-law instigated a lawsuit to harass her), *reh'g denied.* Consequently, we conclude that the trial court's findings of fact on this point are supported by the record and are not clearly erroneous.[4] *See Klebes v. Forest Lake*

---

**3.** The record from the first appeal in this case has been made part of this appeal as well. We refer to the record from the first appeal as the "Supp. Record."

**4.** Because we conclude that the trial court's determination that the Scott parties acted in bad faith was not erroneous, we need not

determine whether the trial court's determination that the Scott parties' challenge to the settlement agreement through their motion to correct errors was frivolous, unreasonable, or groundless was erroneous. *See Kintzele,* 670 N.E.2d at 102 (determining that a court may

*Corp.*, 607 N.E.2d 978, 984 (Ind.Ct.App. 1993) (affirming an award of attorney fees where a husband and wife reneged on a settlement agreement and unreasonably and groundlessly attempted to alter the terms of the agreement by further litigation), *reh'g denied, trans. denied.*[5]

The Scott parties argue that they did not understand the settlement agreement and that they had a good faith belief that Allen had signed the settlement agreement without their consent. This argument is nothing more than a request to reweigh the evidence, which we cannot do. *See Kahn*, 533 N.E.2d at 167.

### B.

■ The Scott parties also assert that there is no factual basis for holding all of them jointly and severally liable. The trial court found that all four of the Scott parties had acted in bad faith and had pursued a frivolous, unreasonable, and groundless claim "in refusing to consummate the settlement agreement and continuing to litigate said matter." Record, p. 507. The trial court further determined that "Ernest N. Scott, and by following his lead, Jeanne D. Scott, Ivan L. Scott, and Janet E. (Scott) Oberlander, wanted to harass Elva Randle and Ralph Scott and cause the additional work of this litigation." Record, p. 508. Based on these findings, the trial court concluded that the members of the Scott parties must be held jointly and severally liable.

■ The term "joint and several" means that all parties are bound individually (severally) and as a unit (jointly). *Otto v. Park Garden Assoc.*, 612 N.E.2d 135, 140 (Ind. Ct.App.1993), *reh'g denied, trans. denied.* Here, there is evidence in the record to support the trial court's findings. First, after Allen signed the settlement agreement on behalf of the Scott parties, Jeanne, Ivan, and Janet knew that Ernest's refusal to sign was based on bad faith and acquiesced in his course of action. On May 27, 1994, Jeanne sent Allen a letter describing her and Ernest's displeasure with the settlement agreement and indicating that they would not sign it. In addition, both Ivan and Janet received a letter from Ernest in which he stated that the Randle parties and their attorneys were all dishonest and that he would not let them off the hook.

Second, throughout the case Jeanne, Ivan, and Janet had all indicated that they deferred to Ernest's decisions. At the time that the settlement agreement was being negotiated in April 1994, Jeanne did not involve herself in the discussions. She told Allen, "I know you and Ernie are going to do what's best." Supp. Record, p. 551. Ivan called Allen on April 15, 1994, to discuss his concerns about the proposed agreement, but he decided that whatever Ernest wanted to do would be fine. Allen testified that Janet was "totally disinterested" in the dispute and that she never contacted him on her own. As early as August 1993, Janet told Allen, "Do what

---

award attorney's fees upon a finding of any one of the statutory elements).

**5.** We recognize that there is some question as to the viability of one of the holdings in *Klebes*. In that case, we: 1) affirmed the trial court's determination that the parties' settlement agreement was enforceable; 2) affirmed the trial court's award of attorney fees to one side due to the other side's unreasonable and groundless continuation of the litigation after a settlement was reached; and 3) declined to award appellate attorney fees to the appellees. *Klebes*, 607 N.E.2d at 982–984. Subsequently, in *Miller*, a panel of this court disapproved of the holding in *Klebes* that the agreement

was enforceable. *See Red Arrow Ventures, Ltd. v. Miller*, 692 N.E.2d 939, 946 (Ind.Ct. App.1998), *trans. denied*, 706 N.E.2d 169. However, in *Scott I* we determined that the holding in *Miller* may have been implicitly overruled in turn by our supreme court's decision in *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299 (Ind.1998). We need not resolve this issue because the enforceability of the settlement agreement here is not before us, but we note that the second holding in *Klebes*, that the trial court's award of attorney fees was not erroneous, has not been challenged by any subsequent decision and remains valid.

you think is right. I'll rely on Dad." Supp. Record, p. 552. This evidence supports the trial court's findings that Jeanne, Ivan, and Janet knew that Ernest was acting in bad faith and acquiesced to that course of conduct. Consequently, we conclude that the trial court's findings of fact on this point were not clearly erroneous. *See, e.g., Klebes,* 607 N.E.2d at 984 (imposing liability upon both a husband and a wife where they both reneged on a settlement agreement).

The Scott parties argue that Jeanne, Ivan, and Janet should not be held jointly and severally liable because they did not write the letters that the trial court cited as evidence of Ernest's bad faith. We disagree. Ernest acted in bad faith not by writing the letters, but by refusing to sign the settlement agreement, and Jeanne, Ivan, and Janet all acquiesced in Ernest's bad faith refusal. Consequently, they must bear collective responsibility for the result.

The Scott parties are only challenging the trial court's findings of fact, not its conclusions thereon, on this issue. Therefore, because we have concluded that the trial court's findings of fact were not erroneous, we affirm the judgment of the trial court. *See Klebes,* 607 N.E.2d at 984.

## II.

The second issue is whether the trial court erred when it awarded attorney fees directly to the Randle parties despite the fact that the Randle parties had a contingent fee agreement with their attorneys. The Scott parties argue that because a contingent fee agreement was in place, the Randle parties had not paid any of their own money to their attorneys at the time that the trial court issued the attorney fee award, and the award should have gone directly to the Randle parties' attorneys as compensation for their work. We disagree.

We turn to the governing statute, Ind.Code § 34–52–1–1, for guidance.

Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not over-emphasizing a strict, literal, or selective reading of individual words. *JKB, Sr. v. Armour Pharm. Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Words and phrases are taken in their plain, ordinary, and usual meaning unless the statute manifests a different purpose. *Id.*

Here, Ind.Code § 34–52–1–1 provides, in relevant part, that "[i]n any civil action, the court may award attorney's fees as part of the cost *to the prevailing party, . . . .*" I.C. § 34–52–1–1 (emphasis added). By the plain language of the statute, attorney fee awards are to be given to the prevailing party, not the prevailing party's counsel. Consequently, the trial court was merely acting in accordance with the statute when it awarded attorney fees to the Randle group, and we find no error. *See id.*

## III.

The third issue is whether the trial court erred when it ordered the Scott parties to pay to the Randle parties one-half of the attorney fees, administrative fees, and expenses that were incurred by the Bank, which was a trustee in this case, while the parties litigated the validity of the settlement agreement. The Scott parties assert that the Randle parties lack standing to seek fees and costs on behalf of the bank. The Randle parties assert that they have standing to seek costs on behalf of the trustee because they have a real interest in the property being held in the trust.

The issue of standing focuses on whether the complaining party is the proper person to invoke the court's power. *Darlage v. Drummond,* 576 N.E.2d 1303, 1308 (Ind.Ct.App.1991). The standing requirement assures that litigation will be actively and vigorously contested. *Id.* A plaintiff must show a personal stake in the litigation's outcome and must show that he

has sustained or is in immediate danger of sustaining a direct injury as a result of the defendant's conduct. *Id.*

In this case, the trial court found that "Elva Randle[,] as a real party in interest, standing to lose monies if the fees are not recouped, has sought and is entitled to have an order for payment to her of one-half of the amount of attorney's fees expended by the Trustee of the Edna P. Sager Trust ... which would not have occurred had the settlement of this matter been consummated in April and May of 1994 as intended." Record, p. 508. The trial court also found that "Elva Randle as a real party in interest has sought and is entitled to have an order for the payment to her of the amount of one-half of the Trustee's fees charged for managing the Trust assets and the farmland subject to the trust...." Record, p. 509.

There is evidence in the record to support these findings. According to the settlement agreement, Randle is entitled to certain sections of real property held by the trust free of any interest, and she is entitled to a life estate in other sections of the property held by the trust, with the remainder of the interest in those sections going to Ralph. Therefore, when the trustee was compensated for its attorney fees, administrative fees, and expenses from trust funds during the litigation, Randle and Ralph were directly injured because the trust funds belonged, in part, to them. Indeed, because part of the trust property would eventually be given to the Randle parties as part of the agreement, they had a personal stake in the litigation and vigorously litigated the issues raised by the Scott parties. Furthermore, because the trustee had already been compensated for its fees and expenses, the trustee had no reason to seek compensation from the Scott parties. Based upon these facts and considerations, the trial court did not err when it concluded that Randle was a real party in interest and had standing to request compensation for payment of the trustee's fees and expenses

from trust property. *See, e.g., Darlage,* 576 N.E.2d at 1308 (determining that a creditor had standing to pursue a claim against her former father-in-law on behalf of her ex-husband's estate because she was in the best position to assert the claim and because she was the guardian of the ex-husband's children, who suffered a direct injury as a result of the executrix's failure to protect the estate's rights).

## IV.

The fourth issue is whether the trial court abused its discretion in the course of calculating the attorney fee award. The Scott parties assert that "[t]here were two attorneys too many." Appellants' Brief, p. 34. Specifically, they note that two attorneys represented the Bank and that two attorneys represented the Randle parties. The Scott parties conclude that the Bank and the Randle parties needed only one attorney each and that the four attorneys unnecessarily duplicated one another's work.

As we discussed above, the standard for reviewing the amount of a trial court's attorney fee award is an abuse of discretion. *Baker,* 611 N.E.2d at 137. In this case, the attorneys for the Bank and the attorneys for the Randle parties submitted detailed accounts of the time they expended on this dispute. Although the record shows that multiple attorneys represented each client at the hearings, this was a complex case with numerous substantive and procedural questions. Because of the complex nature of the case, it was not unreasonable for the Randle parties' attorneys to have sought the advice of co-counsel. The trial court determined that the attorneys' hourly rates were "reasonable and consistent with the prevailing market rate in Indiana for the type of services rendered...." Record, p. 508. In addition, the trial court determined that the amount of attorney fees and expenses being claimed was "supported by sufficient documentation." Record, p. 508. Under these circumstances, we cannot say that

the trial court's calculations amount to an abuse of discretion. *See Donahue v. Watson*, 413 N.E.2d 974, 977 (Ind.Ct.App.1980) (determining that the trial court did not abuse its discretion in awarding attorney fees to two attorneys where the subject of the litigation was complex, even though the one of the attorneys spent much of his time reviewing the other attorney's work), *reh'g denied.*

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

BARNES, J. and ROBB, J. concur.