Mary L. KROSLACK,
Plaintiff-Appellant,

v.

The ESTATE OF Joseph KROSLACK, Sr., Deceased, Defendant-Appellee.

No. 3–1284A336.

Court of Appeals of Indiana,
Third District.

March 5, 1986.

Rehearing Denied May 8, 1986.

William P. Hapaniewski, Merrillville, for plaintiff-appellant.

Andrew V. Giorgi, Merrillville, William J. Moran, Highland, for defendant-appellee.

GARRARD, Judge.

Joseph Kroslack, Senior (decedent) died on August 31, 1980, leaving a will which named his son, Joseph Kroslack, Junior (son) as executor. The will explicitly stated that the decedent's widow, Mary L. Kroslack (widow), should take nothing under it. It appears that at his death the decedent owned several joint and pay-on-death bank accounts, the primary beneficiary of which was the son, Joseph Kroslack, Junior. These accounts contained approximately Thirty Thousand Dollars ($30,000).

Under IC 32–4–1.5–7, the beneficiaries of such joint accounts are liable to the estate for the funds necessary to pay creditors and survivors' allowances. Proceedings to assert liability under the section must be commenced within one year after the decedent's death. A demand must be made on the personal representative before proceedings under the act can begin.[1]

---

1. "34–4–1.5–7 [32–4–1.5–7] Liability for priority claims against estate; limitations

Sec. 7. No multiple-party account is effective against an estate of a deceased party to transfer to a survivor sums needed to pay claims, taxes, and expenses of administration, including the statutory allowance to the surviving spouse or dependent children, if other assets of the estate are insufficient. A surviving party, P.O.D. payee, or beneficiary who receives payment from a multiple-party account after the death of a deceased party shall be liable to account to the personal representative for amounts the decedent owned beneficially immediately before his death to the extent necessary to discharge the claims and charges mentioned above remaining unpaid after application of the decedent's estate. A survivor of a multiple-party

The first inventory of the estate did not mention the multi-party accounts. It appears that without them the estate was insolvent.

On January 13, 1981 the widow made a demand on the son, apparently as executor of the estate, to begin action pursuant to IC 32-4-1.5-7. On January 14, she elected to take against the will, and invoked that section by name. On December 11, 1981 the widow petitioned to charge the beneficiaries of the multi-party accounts pro-rata for the contributions necessary to pay the expenses of administration and her widow's allowance. On April 21, 1982 the son was ordered to collect the funds from the beneficiaries of the multi-party accounts. It appears that by September 24, 1982 the son had taken no action to collect these funds. In February of 1983 he was held in contempt of court and a special administrator was appointed to collect the funds from the various beneficiaries. In May of 1984 the son was again held in contempt. In August of 1984 the administrator and the son filed a petition for court approval of their agreement to compromise the estate's claims against the multi-party account beneficiaries. The settlement called for Eight Thousand Dollars ($8,000) to be paid into the otherwise insolvent estate. From this various expenses would be subtracted and the balance would be paid to the widow as widow's allowance. *See* IC 29-1-4-1.

After a hearing held on September 7, 1984 the court approved the settlement over the widow's objection. It is from this order that the widow appeals.

The widow presents five arguments to this court:

1) That the probate division erred when it approved the settlement and compromise over her objection.

2) That the court's order approving the settlement between the special administrator and Joseph Kroslack, Junior was against the weight of the evidence presented in the case.

3) That it was error not to grant the widow interest on her widow's allowance from the date of demand from the son.

4) That the probate division erred in making its award to the widow "in lieu" of her widow's allowance.

5) That it was incorrect to order that the costs for a special administrator be paid out of the assets of the estate and not by the multi-party account beneficiaries.

We affirm.

### Procedural Matters

■ The son has argued that due to various shortcomings in the record and briefs presented to this court, the widow has waived her arguments on appeal. The various rules cited by the son were not designed to give the parties a sword to use against each other. Instead they seek to provide for the efficient administration of justice without exorbitant expense. The son has not pointed out any prejudice the alleged shortfalls in the record and brief cause him, and we are unable to say that we have had difficulty in dealing with the case because of them. Neither do we believe that the judge's certification was insufficient for failing to have certified the entire record rather than just the proceed-

account is liable for that portion of the total amount payable to the decedent's estate that the decedent's beneficial interest in the survivor's account bears to the total of the decedent's beneficial interests in all multiple-party accounts. A survivor of a multiple-party account against whom an action is brought by the decedent's estate is entitled to have any other survivor of any multiple-party account made a party to the action. No proceeding to assert this liability shall be commenced unless the personal representative has received a written demand by a surviving spouse, a creditor or one acting for a

dependent child of the decedent, and no proceeding shall be commenced later than one (1) year following the death of the decedent. Sums recovered by the personal representative shall be administered as part of the decedent's estate. This section shall not affect the right of a financial institution to make payment on a multiple-party account according to the terms thereof, or make it liable to the estate of a deceased party unless before payment the institution has been served with process in a proceeding by the personal representative."

ings held before the court. No certification is necessary if there is no oral evidence taken at a trial. *State ex rel. O'Neal v. Cros* (1978), 177 Ind.App. 68, 378 N.E.2d 10. Therefore, we can see no need for a judge's certificate to cover any more matters than what were argued in hearings before him. As to all other matters, the clerk's certificate provides the necessary assurances of authenticity. We see no reason to dismiss the appeal.

## I.

■ Did the trial court err when it approved the settlement and compromise over the widow's objection?

In essence, the widow argues that she could not be bound by the compromise between the administrator and the son since she was not a party to it. Unfortunately, she misunderstands the nature of the settlement.

During its existence, an estate goes through at least two phases. First, the assets of the estate must be mustered. That is to say, its assets must be collected so that funds are available to pay the taxes owing, the estate's creditors, the costs of administration, and the beneficiaries of the estate. Second, after the assets are collected, the estate is distributed to the creditors and the beneficiaries of the estate.

The estate fiduciary, whether an executor, administrator, or special administrator, is entrusted with the duty to muster the estate. In Indiana, the fiduciary also has the power to compromise claims owed the estate when such is thought to be in its best interests, and when properly ordered to do so by the court. IC 29–1–13–5. Since a determination of the best interests of the estate is a judgment calling for the exercise of sound judicial discretion, the most stringent standard of review would examine the decision only for an abuse of that discretion.[2]

From the record, it appears that the son denied that he had any obligation to con-

tribute the monies he received from the multi-party accounts. He seems to have asserted that by mentioning IC 32–4–1.5–7 in her January 14, 1981 election to take against the will, the widow did not start an action within the meaning of the section's statute of limitation, and that such action was not taken until her petition to charge beneficiaries on December 11, 1981. December 11 would, of course, be beyond the limitation provided in IC 32–4–1.5–7.

We need not decide the correctness of the son's construction of the statute of limitation because it is immaterial. What is material to the record presented here is that the son could have litigated his position in good faith. Such litigation, even if successfully prosecuted by the special administrator, would have delayed settling the estate and could have consumed much of the Thirty Thousand Dollars' which might ultimately have been paid into it. If unsuccessful, the estate would have taken nothing. Instead of taking such risks, the special administrator, with proper authorization by the court, chose to compromise the estate's claim and settle it for Eight Thousand Dollars. IC 29–1–13–5 plainly authorizes him to do so. This was a tactical decision. The widow has not argued, and we do not perceive, that the compromise was made in bad faith or that it was the product of fraud. We therefore defer to the sound discretion of the trial court and the special administrator. Since the estate's interests and not the widow's were being compromised, its consent, and not hers, was required.

## II.

■ We believe that what has been said in part I, *supra*, also disposes of the widow's contentions that the court's order was against the weight of the evidence and was in error for failing to grant her interest on the principal of her allowance from the date she first demanded it.

The weight of the evidence was not at issue before the probate division. At issue

---

**2.** Some authority indicates that the decision should only be examined for fraud or collusion.

See 31 Am.Jur.2d *Executors and Administrators* Section 258.

was the fairness of the proposed settlement, a matter to be decided by the sound judicial discretion of the court.

■ Further, we cannot say that it was an error to not order interest to be paid on the widow's Eight Thousand Five Hundred Dollar allowance, when there were insufficient assets to pay the principal sum.

### III.

■ Did the probate division err in awarding the widow certain sums "in lieu" of her surviving spouse's allowance?

If the trial court attempted to award the widow a sum other than that to which she was entitled by law, it would certainly have committed an error. However, while the trial court did say that it was granting her an award "in lieu of her widow's allowance" we believe that when the order is read as a whole it becomes obvious that the probate court meant to award the funds to the widow as surviving spouse's allowance, and the words "in lieu of" were used merely to recognize the amount as less than the Eight Thousand Five Hundred Dollars provided by the statute. The error in phrasing was harmless, since it did not affect her rights.

### IV.

■ Did the probate court err in ordering that the remaining costs of administering the estate be paid out of the surviving spouse's allowance?

Had it ordered that the expenses of administration be paid out of her widow's allowance, the probate court would have committed error. However, it did nothing of the kind. It ordered that the expenses of estate administration be paid out of the estate. This is plainly contemplated by the law. IC 29-1-14-19. The priority statute then came into effect. IC 29-1-14-9. It provides that the administration expenses are one of the two items which receive priority over the surviving spouse.[3] By ordering that these expenses be paid out of the estate before the widow is paid, the court was merely obeying the mandate of Indiana law.

■ The widow also argues that the will makes the son, as executor, personally liable for these expenses. The provision in question is a standard one.[4] We have been referred to no cases which held that such a provision made the personal representative and not the estate liable for the expenses in question, and we believe it to be settled law that the estate and not the personal representative is liable for them.

---

**3.** "29-1-14-9 Classification of claims; preferences

  Sec. 9. All claims shall be classified in one (1) of the following classes. If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order:

  (1) Costs and expenses of administration.

  (2) Reasonable funeral expenses. However in any estate in which the decedent was a recipient of public assistance under 'The Welfare Act of 1936', IC 12-1-1 through IC 12-1-12, the amount of funeral expenses having priority over any claim for the recovery of public assistance shall not exceed the limitations provided for under IC 12-1-5-11; IC 12-1-6-11; IC 12-1-7-13; IC 12-1-7.1-13; and IC 12-1-19-1.

  (3) Allowances made under IC 29-1-4-1.

  (4) All debts and taxes having preference under the laws of the United States.

  (5) Reasonable and necessary medical expenses of the last sickness of the decedent, including compensation of persons attending him.

  (6) All debts and taxes having preference under the laws of this state; but no personal repre-

sentative shall be required to pay any taxes on any property of the decedent unless such taxes are due and payable before possession thereof is delivered by the personal representative pursuant to the provisions of IC 29-1.

  (7) All other claims allowed.

No preference shall be given in the payment of any claim over any other claim of the same class, nor shall a claim due and payable be entitled to a preference over claims not due."

**4.** "I direct that all my just debts, including expenses of my last illness and funeral, and cost of administering my estate, be paid by my personal representative as soon after my death as may be convenient. I direct my personal representative to pay, as a part of the aforesaid expenses, all inheritance, estate, succession and transfer taxes, including interest and penalties thereon, assessed on any property or interest included in my estate for tax purposes, without reimbursement from any persons named herein."

While we find the son's activities during the administration of his father's estate to have been morally reprehensible, we cannot say that the trial court erred in making the decisions it made on the questions it had before it.[5] The decision of the probate division is therefore affirmed in all things.

Affirmed.

HOFFMAN, J., concurs.

STATON, P.J., dissents and files separate opinion.

STATON, Presiding Judge, dissenting.

I dissent. The trial court abused its discretion when it approved the settlement between the son and the special administrator.

The foundation for the majority's conclusion is its premise that the son "could have litigated his position in good faith," thus consuming much of the money he held from the joint and pay-on-death bank accounts. The majority also states that "we do not perceive that the compromise was made in bad faith...." The record and the law, however, support only the opposite conclusion.

Ind.Code 32-4-1.5-7, in relevant part, provides:

No multiple-party account is effective against an estate of a deceased party to transfer to a survivor sums needed to pay claims, taxes, and expenses of administration, including the statutory allowance to the surviving spouse or dependent children, if other assets of the estate are insufficient. A surviving party, P.O.D. payee, or beneficiary who receives payment from a multiple-party account after the death of a deceased party shall be liable to account to the personal representative for amounts the decedent owned beneficially immediately before the death....

Since the son was a pay-on-death payee and *also* the estate's executor, his conflict of interest is readily apparent. Such a situation is addressed by Ind.Code 29-1-16-1(c) which, again in relevant part, provides:

Every personal representative shall be liable for any loss to the estate arising from his neglect or unreasonable delay in collecting the credits or other assets of the estate or in selling, mortgaging or leasing the property of the estate; for neglect in paying over money or delivering property of the estate he shall have in his hands;

\*    \*    \*    \*    \*    \*

for loss to the estate through self-dealing;

\*    \*    \*    \*    \*    \*

and for any other negligent or wilful act or nonfeasance in his administration of the estate by which loss to the estate arises.

In spite of the statutory duty imposed by Ind.Code 32-4-1.5-7 and the clear prohibition on self-dealing contained in Ind.Code 29-1-16-1(c), the son refused to turn over the benefits of the multi-party accounts. This refusal led to a court order to pay in the funds. The son's further refusal led to not one but two contempt citations and appointment of a special administrator to collect the funds (which, of course, were never fully collected). In light of the son's history of—literally—*contemptible* self-dealing, the majority's characterization of the son's position as one of good faith is clearly wrong.

I cannot agree with a result which allows an executor to wrongfully withhold funds clearly due an estate, in effect blackmailing the special administrator into a compromise so that the widow can get at least some portion of her statutory allowance. Such a result is not consistent with the law, princi-

---

5. Of course, the son was potentially liable for constructive fraud if he breached his duty of undivided loyalty to the estate by acting in his own self interest and that of close family members. However, these issues were not properly raised, and we intimate no comment on what our ultimate resolution of them would have been. *See* 37 C.J.S. *Fraud* Section 2(c)(2); IC 29-1-16-1(c); IC 29-1-17-13.

ples of equity,[1] or good policy. The trial court's approval of the "compromise" was an abuse of discretion. I would reverse.

---

**1.** Ind.Code 29–1–17–16 provides:

*Equitable remedies preserved.*—The limitations provided for in IC 29–1–1–21 and section 13 [29–1–17–13] [both establishing a one-year limi-tations period in which to bring suit to chal-lenge settlement] of this chapter shall not de-prive any interested person of the relief now afforded him under the rules of equity.