Mary L. KROSLACK, Appellant
(Plaintiff Below),

v.

The ESTATE OF Joseph KROSLACK, Sr., Deceased, Appellee
(Defendant Below).

No. 45S03–3703–CV–310.

Supreme Court of Indiana.

March 13, 1987.

William P. Hapaniewski, Merrillville, for appellant.

William J. Moran, Highland, for appellee.

SHEPARD, Chief Justice.

Appellant Mary L. Kroslack has challenged a trial court's order approving a compromise of obligations due her deceased husband's estate. The Court of Appeals concluded that the proposal for compromise represented a "tactical decision" for the special administrator of the estate and held that the trial court had the discretion to approve it. *Kroslack v. Estate of Kroslack* (1986), Ind.App., 489 N.E.2d 650. We grant transfer and hold that approval of the compromise was not in the best interests of the estate and therefore constituted an abuse of discretion.

On August 31, 1980, Joseph J. Kroslack died testate, with an estate consisting of approximately $1300 in personal property. In addition, decedent owned non-probate assets in excess of $130,000, including jointly-owned property, stocks, and multi-party[1] accounts. The survivor of the multi-party accounts, containing approximately $30,000, was Joseph J. Kroslack, Jr. He was also named by the will as executor of the estate. The will expressly stated that decedent's widow, Mary L. Kroslack, should take nothing.

On January 14, 1981, the widow elected to take the survivor's allowance of $8500 reserved to her under Ind.Code 29–1–4–1 (Burns 1985 Supp.) Realizing that the estate did not have sufficient assets to meet this claim, she had one day previously presented a written demand[2] to the son, as

---

1. An account is defined as "a contract of deposit of funds between a depositor and a financial institution and includes a checking account, savings account, certificate of deposit, share account and other like arrangement," while a multi-party account can be "(i) a joint account; (ii) a P.O.D. account; or (iii) a trust account." Ind. Code § 32–4–1.5–1(1), (5). Decedent's multi-party accounts consisted of three P.O.D. accounts and a joint certificate of deposit.

2. The letter of January 13, 1981 stated, "a demand is hereby made of you as personal representative of the estate of Joseph Kroslack, Sr.

personal representative, to institute action under Ind. Code § 32–4–1.5–7, which provides, in pertinent part, that:

> no multi-party account is effective against an estate of a deceased party to transfer to a survivor sums needed to pay claims, taxes, and expenses of administration, including the statutory allowance to the surviving spouse ..., if other assets of the estate are insufficient.... No proceeding to assert this liability shall be commenced unless the personal representative has received a written demand by a surviving spouse ... and no proceeding shall be commenced later than one [1] year following the death of the decedent.... Sums recovered by the personal representative shall be administered as part of the decedent's estate.

On December 11, the widow filed a "petition for authority to charge beneficiaries and survivors pro-rata." The son never took action to collect funds from the multi-party accounts, of which he was the beneficiary.

On April 2, 1982, the probate court ordered the son, as personal representative, to collect funds from the multi-party account beneficiaries "to the extent necessary to discharge all claims, taxes, expenses of administration ... and surviving spouse's statutory allowance." The son failed to comply with this court order and was held in contempt.

On February 2, 1983, the court appointed a special administrator to collect the funds. The funds still were not forthcoming, and the son was once again held in contempt. On May 7, 1984, he was ordered to pay $20,000 to the clerk of the court. The son requested a stay of the order for sixty days to pursue appellate remedies or file a writ of mandate or prohibition. No money was

paid, nor were any proceedings initiated by the son.

On September 7, 1984, the special administrator presented for the court's approval an agreement of compromise and settlement, which provided that the estate's claim against the multi-party account beneficiaries would be compromised at $8,000. Costs of administration, including court costs and a reduced fee of $1,000 to the special administrator, would be deducted, and the remainder would be paid to the widow. The court approved the compromise over the widow's objection.

■ The widow contends that the trial court erred when it approved the settlement and compromise over her objection. The Court of Appeals correctly noted that the interests of the estate, not the widow, were being compromised, and that her consent was not required. While she had a claim against the estate, it was the estate, as represented by the special administrator, which had a claim against the beneficiaries of the multi-party accounts. It was this claim which was compromised. The consent of a party interested in the estate is not necessary for the exercise of the personal representative's power to compromise a claim. *See, Fender v. Phillips* (1915), 59 Ind.App. 85, 108 N.E. 971.

■ While a personal representative may compromise claims of the estate, the compromise must be fair, reasonable, and in the best interests of the estate. Ind Code § 29–1–13–5 (Burns 1972). In determining the fairness of this compromise, the trial court considered the possible effect of continued litigation on the value of the estate. The son had steadfastly refused to relinquish the funds, arguing that the widow's claim, though admittedly valid, was not timely.[3] He asserted his intention to pursue this theory on appeal if the settle-

---

... to surrender to the probate proceedings the funds from the multi-party account.... This demand is made upon you to furnish the surviving wife, Mary L. Kroslack, her surviving spouse statutory allowance as authorized by I.C. 29–1–4–1 and the I.C. 32–4–1.5–7, in the amount of eight thousand five hundred ($8,500.00) dollars."

3. He apparently argues that the demand of January 13, 1981, was insufficient, and that proceedings were not instituted until the filing of the petition to charge *pro rata,* filed December 11, 1983. This filing was outside the one year period of limitation established by Ind. Code § 32–4–1.5–7.

ment and compromise were not approved. Concerned that the costs of continued litigation would leave the estate insolvent, the court found the compromise reasonable and granted its approval.

■ Though the Court of Appeals did not resolve the son's timeliness argument on its merits, that court did conclude that "the son could have litigated his position in good faith." *Kroslack*, 489 N.E.2d at 653. However, as Judge Staton noted in his dissent, the son's actions were characterized by a "history of—literally—*contemptible* self-dealing." *Kroslack*, 489 N.E.2d at 655 (emphasis in original). Regardless of any good faith belief in the merits of his argument, the son is twice estopped from pursuing litigation.

First, the son consistently exercised bad faith as executor of his father's estate. From the time of his appointment, the son failed in his fiduciary duty to act in the best interests of the estate. His first inventory did not include three of the four multi-party accounts which the court later found to be liable to the estate. When claims were made against the estate for funeral expenses and estate taxes, he made no effort to collect funds from the multi-party accounts as contemplated by § 32–4–1.5–7. Rather, he compromised the claims, moved to have the estate declared insolvent, and gallantly waived any fee or claim as personal representative.

The son was obviously not motivated by the best interests of the estate, but by his personal interest in protecting the funds of the multi-party beneficiaries. This violation of good faith on the part of the son would preclude him from invoking the equitable authority of the court to approve a compromise because he could not be said to come forward with "clean hands."[4]

■ Moreover, as a multi-party beneficiary, the son is estopped from asserting a statute of limitations defense because, as executor, he was responsible for any delay in seeking the funds. The claimant does

not personally proceed against a multi-party account beneficiary under Ind. Code § 32–4–1.5–7. A multi-party account is available to the estate for certain claims; recovery is made by the personal representative, and funds are administered as part of the estate. Therefore, upon receiving a timely demand from a qualified claimant, the personal representative, on behalf of the estate, proceeds against the multi-party account representative.

In this case, the son received a sufficient demand but failed to take timely action to collect funds from the multi-party account beneficiaries. Because of this failure as personal representative, he is estopped from asserting the statute of limitations against actions which he himself should have timely pursued.

Thus, the estate should not have had to bear any cost of "good faith" litigation by the son. In effect, the son has blackmailed both the special administrator and the trial court into approving a settlement which is clearly not in the best interests of the estate by dealing in bad faith and in his own self-interest and threatening to continue such behavior at the expense of the estate. Settlement by the special administrator appears to have been motivated by a desire to conclude a lengthy and unpleasant probate. Nevertheless, approval of the settlement rewarded the son's obdurate behavior rather than punished it.

Accordingly, transfer is granted, the opinion of the Court of Appeals is vacated, and the judgment of the trial court is reversed. The cause is remanded for further proceedings relating to the collection of assets and payment of the widow's share.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.

---

**4.** "It is one of the very first principles of equity, that he who asks equity must do equity; that a party coming into a court of equity must come in with clean hands, free from wrong himself in relation to the matter in which he asks equitable relief." *McAllister v. Henderson* (1892), 134 Ind. 453, 459, 34 N.E. 221, 222–23.