Casey **BINDER**, Appellant–Plaintiff,

v.

**BENCHWARMERS SPORTS LOUNGE**, Appellee–Defendant.

No. 71A03–0503–CV–130.

Court of Appeals of Indiana.

Aug. 24, 2005.

Patrick J. Hinkle, Patrick J. Hinkle, P.C., South Bend, for Appellant.

Claire Konopa Aigotti, Konopa, Reagan & Aigotti, P.C., South Bend, for Appellee.

## OPINION

ROBB, Judge.

Casey Binder appeals the trial court's entry of summary judgment against him. We reverse.

### Issue

Binder raises one issue for our review: whether Benchwarmers Sports Lounge

should be estopped from pleading the statute of limitations defense.

### Facts and Procedural History

Binder worked at a bar called Benchwarmers Sports Lounge. At various times he worked in several different capacities: as an employee for the owner, as an "independent contractor" working security for the owner, and as an "independent contractor" working security for a gentleman hosting events at the bar. On January 16, 2002, Binder was working in the bar and was injured in attempting to break up a fight. Binder timely filed an Application for Adjustment of Claim with the Indiana Worker's Compensation Board.

During the course of the worker's compensation litigation, Binder's attorney, Patrick J. Hinkle, sent Benchwarmers discovery. Interrogatory No. 1.2, served on November 10, 2003, sought the names of Benchwarmers' witnesses and their expected testimony. Benchwarmers, by its attorney Sally P. Norton, responded on December 19, 2003, in pertinent part: "Unknown at this time; however, the Defendant may call the Plaintiff, Steve Mitchell, Meka Rans, and South Bend Police Records custodian to testify as to the facts surrounding the Plaintiff's employment with the Defendant and circumstances surrounding the January 16, 2002 alleged injury." Appellant's Appendix at 3. Interrogatory No. 1.4, also served on November 10, 2003, asked: "What was the relationship between the Plaintiff Casey Binder and the Defendant at the time of the alleged injury?" Id. Benchwarmers responded: "Objection. This interrogatory is too vague and ambiguous so as to enable the Defendant to articulate a response to the same." Id.

Hinkle followed up on that response with a letter dated January 2, 2004. That letter read:

Is your client denying Casey was an employee at the time of the alleged injury?

My Interrogatory No. 1.4 was intended to discover whether your client contends Casey was an employee, independent contractor, or invitee at the time he was injured. Can you respond now or do you still have an objection?

Please advise.

Appellant's App. at 94b. Norton responded by letter dated January 5, 2004:

In response to your January 2, 2004 correspondence wherein you request my client's position on whether Mr. Binder was an employee at the time of the alleged injury, it is my client's position that your client was not acting in the course and scope of his employment at the time of the alleged injury. I trust this answers the question posed in your January 2, 2004 correspondence.

Appellant's App. at 95.

On or about January 16, 2004, any claim Binder may have had against Benchwarmer's went from ripe to untimely as the two year statute of limitations expired without Binder filing a lawsuit.

On February 23, 2004, Hinkle took the deposition of Steven Mitchell, Benchwarmers' owner at the time of Binder's incident. At that time, Hinkle found out, for the first time, that, according to Mitchell, Binder was not employed by Benchwarmers in January of 2002. Appellant's App. at 114–15. Mitchell claimed that Binder was working security for a third party on the night of the incident. Appellant's App. at 114.

Binder filed his complaint in this matter on March 11, 2004. Benchwarmers answered and raised the defense of the statute of limitations. Benchwarmers then moved for judgment on the pleadings, claiming Binder's complaint was untimely.

The parties briefed the issue, and Binder moved to amend his complaint to add a count of fraud. On February 1, 2005, the trial court allowed the amendment, converted Benchwarmers' motion to a motion for summary judgment, and then dismissed the negligence claim on the statute of limitations grounds and dismissed the fraud count for failure to state a claim.

Binder now appeals.

## Discussion and Decision

■ Binder contends that we should invoke the doctrine of equitable estoppel to save his claim. Having reviewed the evidence before us,[1] we agree.

## I. Standard of Review

Our standard of review is the same as the trial court's when reviewing a grant of summary judgment. *Embry v. O'Bannon*, 798 N.E.2d 157, 159 (Ind.2003). Summary judgment is appropriate only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* We consider only those facts that the parties designated to the trial court. *St. Joseph County Police Dep't v. Shumaker*, 812 N.E.2d 1143, 1145 (Ind.Ct.App.2004), *trans. denied.* "Where, as here, the material facts are essentially undisputed, our task is to determine whether the trial court properly applied the law to the facts." *Caito Foods v. Keyes*, 799 N.E.2d 1200, 1201 (Ind.Ct.App. 2003).

## II. Equitable Estoppel

The parties agree that the instant lawsuit was filed outside the applicable two-year statute of limitations. *See* Ind.Code § 34–11–2–4. Benchwarmers properly pled and raised this defense. The trial court dismissed Binder's negligence claim on this basis, and also found that equitable estoppel did not work to rehabilitate the negligence claim. We disagree with the trial court in that regard, and hold that Benchwarmers is estopped from asserting the statute of limitations defense in this case.

■ Equitable estoppel is "[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had." BLACK'S LAW DICTIONARY 538 (6th ed.1990). A plaintiff can use the doctrine to bar a defendant from asserting the statute of limitations, if the relevant criteria are met. *Caito Foods*, 799 N.E.2d at 1202. The elements of equitable estoppel are:

1) a [mis]representation or concealment of a material fact; 2) made by a party with knowledge of the fact and with the intention that the other party act upon it; 3) to a party ignorant of the fact; and 4) which induces the other party to

---

1. Benchwarmers filed a Motion to Strike Portions of Appellant's Appendix based on the fact that certain parts were not contained in the record below. Benchwarmers also claims that the Appendix does not comply with Indiana Rule of Appellate Procedure 50 in that it does not contain a chronological case summary or verification of accuracy. We note that, in fact, the Appellant's Appendix does contain a verification of accuracy signed by Binder's attorney. Appellant's App. at 140 (unmarked). Nevertheless, it appears to us (even though neither party has provided us with a chronological case summary from the trial court) that the pages of the Appendix to which Benchwarmers objects were not in the record below and were not before the trial judge. We therefore GRANT Benchwarmers' motion to strike, and do strike pages 6–13, 16–38, and 42–43 from Appellant's Appendix. We also admonish Binder's counsel to pay closer attention to our appellate rules and his duties, particularly with regard to the accuracy of his verification, as an officer of the court.

rely or act upon the fact to his detriment.

*Id.* The parties' arguments focus on elements one and three; Benchwarmers implicitly concedes, and we agree, that the evidence establishes elements two and four.

Hinkle found himself in a somewhat precarious position in this case; one certainly not unknown to plaintiffs' lawyers in this state. His client comes to him, says he was injured, and relays the facts. Hinkle knows that if his client was an employee at the time of the incident, his remedy is probably in worker's compensation. *See* Ind.Code § 22–3–2–6; *Rassbach v. Alcala,* 775 N.E.2d 353, 356 (Ind.Ct.App.2002) (noting that recovery for personal injury or death by accident arising out of and in the course of employment can be sought exclusively under the Indiana Worker's Compensation Act). If his client was an independent contractor, his remedy is likely with a tort lawsuit. Believing the facts give rise to a worker's compensation claim, Hinkle files a claim with the Indiana Worker's Compensation Board. Perhaps Hinkle knows, or subsequently learns, that there are facts indicating that his client may not have been an employee at the time of the incident. The expiration of the statute of limitations nears. What should he do? One option, certainly the best option in hindsight, would have been to go ahead and file the tort action. *See Cox v. American Aggregates Corp.,* 684 N.E.2d 193 (Ind.1997) ("...nothing prohibits an employee from filing a claim with the Board and initiating a lawsuit concurrently..."). Another option would be to ask the other side if they were going to contest his client's status as an employee. And that is exactly what Hinkle tried to do.

Hinkle wrote Norton an extremely clear letter on January 2, 2004, just before the expiration of the statute of limitations, ask-ing: "Is your client denying Casey was an employee at the time of the alleged injury?" Appellant's App. at 94b. Norton responded: "... it is my client's position that your client was not acting in the course and scope of his employment at the time of the alleged injury." *Id.* Of this response, Benchwarmers states: "Clearly, Ms. Norton had advised plaintiff's counsel that Benchwarmers took the position that his client was not a Benchwarmers' employee on January 16, 2002." Brief of Appellee at 10. Although we understand that Benchwarmers may have felt compelled to take this position on appeal, we are nevertheless bothered by the appearance of this statement in Benchwarmers' brief. Rather than attribute it to an intent to deceive this court, we would prefer to believe that it was penned by someone completely unfamiliar with worker's compensation law. Any person with a working knowledge of worker's compensation law would understand Norton's statement to presume, rather than deny, employment.

 It almost goes without saying that in order to bring a worker's compensation claim, the plaintiff must show that there was an employee-employer relationship. Whether the injury occurred "arising out of" and/or "in the course of" the employment are potential issues, to be sure, but only after the employer-employee relationship has been established. *See Rogers v. Bethlehem Steel Corp.,* 655 N.E.2d 73, 75 (Ind.Ct.App.1995). In the worker's compensation arena, these phrases have very specific and well-defined meanings. "The words 'in the course of' refer to the time, place and circumstances under which the injury occurred." *Rogers,* 655 N.E.2d at 75. "The words 'arising out of' refer to the origin or cause and are descriptive of the accident's character." *Id.* It makes no sense to discuss whether an injury arose out of or in the course of

employment *if there is no employment.* In an analogous way, it would make no sense for a father to discuss whether or not his son pitched in last night's game if his son was not even on the team. Talking about whether or not his son pitched presumes that he is on the team. Similarly, discussing the issues of whether the injury arose out of and in the course of employment in the worker's compensation context presumes employment. Further, Norton's letter actually refers to "his employment." Appellant's App. at 95. How this could be read as "he was not employed on the date of the alleged injury, but had been in the past," as Benchwarmers contends, is baffling. *See* Brief of Appellee at 10.

Because Norton was Benchwarmers' worker's compensation attorney, she presumably knew Indiana worker's compensation law. Knowing that, and the fact that Benchwarmers has not claimed that it came upon any kind of newly discovered evidence, we can only conclude that Norton's letter to Hinkle was intentionally deceptive.

The fact that the statement could be read as technically correct gives us no pause. We look to the meaning that the statement had to the intended recipient. Here, the representation was obviously calculated to induce a belief that Benchwarmers would not contest Binder's status as an employee.

But, Benchwarmers claims, "[a] defendant has no obligation to disclose its defenses to a lawsuit, other than affirmative defenses..." Brief of Appellee at 9. This misses the point. A defendant does have an obligation not to make a material misrepresentation. Even more than that, Norton, as an attorney, is held to a higher standard. *Fire Ins. Exchange v. Bell by Bell*, 643 N.E.2d 310, 312 (Ind.1994). As our supreme court has stated:

"A lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms. In fulfilling our duty to represent a client vigorously as lawyers, we will be mindful of our obligations to the administration of justice, which is a truth seeking process designed to resolve human and societal problems in a rational, peaceful, and efficient manner."

.　　.　　.　　.　　.

■ We decline to require attorneys to burden unnecessarily the courts and litigation process with discovery to verify the truthfulness of material representations made by opposing counsel. The reliability of lawyers' representations is an integral component of the fair and efficient administration of justice. The law should promote lawyers' care in making statements that are accurate and trustworthy and should foster the reliance upon such statements by others. *Id.* at 312–13 (quoting 143 F.R.D. 441, 448 (1992), The Preamble of the Standards for Professional Conduct within the Seventh Federal Judicial Circuit). "As an officer of the Court, every lawyer must avoid compromising the integrity of his or her own reputation and that of the legal process itself." *Smith v. Johnston*, 711 N.E.2d 1259, 1264 (Ind.1999). "Any lawyer's duty to advance her client's interest is circumscribed by the bounds of the law and her ethical obligations." *Id.* As tempting as it may be, the statute of limitations "is not a trap to be set by counsel to catch unsuspecting litigants." *See id.* (stating that a default judgment should not be set as a trap). Our supreme court has rejected the gaming view of our legal system. *Id.*

Our conclusion that Norton was intentionally deceptive is only strengthened by Benchwarmers' similarly deceptive response to Interrogatory No. 1.2 and some-

what-less-than-legitimate objection to Interrogatory No. 1.4. It is apparent to us that Benchwarmers was intentionally trying to conceal its position in the worker's compensation matter until the statute of limitations expired on any possible tort action. We will not, indeed cannot, condone this kind of approach to litigation. We therefore do not hesitate to conclude that Norton's January 5, 2004 letter contained a material misrepresentation.

Turning to element three, we will not apply the doctrine of equitable estoppel where the party to which the misrepresentation was made had the means to discover the information on their own. *Caito Foods*, 799 N.E.2d at 1202. Benchwarmers claims that Binder should have known his employment status and "clearly had access to the same factual information as Benchwarmers in determining whether he'd be considered an employee." Brief of Appellee at 11. We disagree with this contention, but, even if true, it misses the mark. Binder was not trying to discover from Benchwarmers whether Binder was actually an employee or not, but simply whether Benchwarmers would dispute whether he was an employee or not. Binder did not know that information and had no way to discover that information, reasonably, other than by asking Benchwarmers. And, as discussed above, Hinkle had every right to rely on Norton's representation.

### Conclusion

Benchwarmers' worker's compensation counsel, Sally P. Norton, made a material misrepresentation to Binder's counsel concerning whether Benchwarmers would contest Binder's status as an employee, causing Binder to miss the statute of limi-

tations deadline for his tort suit against Benchwarmers. We therefore hold that Benchwarmers is equitably estopped from asserting the statute of limitations defense in this case. The trial court's grant of summary judgment on Count I of Binder's Second Amended Complaint is hereby reversed and remanded to the trial court for further proceedings.[2]

Reversed and remanded.

FRIEDLANDER, J., and BAILEY, J., concur.

---

**2.** Binder abandoned Count II of his Second Amended Complaint, so we affirm summary

judgment on that count.