## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2018, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ann C. Coriden
Coriden Glover, LLC
Columbus, Indiana

ATTORNEY FOR APPELLEE

Jason H. Guthrie
Thomasson, Thomasson, Long &
Guthrie, P.C.
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Unsupervised Estate of Raymond F. Handley, Gregory Staten, Sr., *Appellant,* <br><br> v. <br><br> Curt Handley, *Appellee.* | January 30, 2018 <br><br> Court of Appeals Case No. 03A04-1703-EU-533 <br><br> Appeal from the Bartholomew Superior Court. <br><br> The Honorable James D. Worton, Judge. <br><br> Trial Court Cause No. 03D01-1605-EU-2968 |

**Darden, Senior Judge**

## Statement of the Case

[1] Gregory Staten, Sr., appeals the trial court's order finding that he is not an heir at law, removing him as personal representative of the Unsupervised Estate of

Raymond F. Handley, and replacing him with Curt Handley, Raymond's brother. We reverse and remand for an evidentiary hearing to determine who should serve as personal representative.[1]

## Issue

Staten raises three issues, one of which we find dispositive and restate as: Whether Handley is estopped from arguing that Staten is not Raymond's biological son and thus barred from serving as personal representative.

## Facts and Procedural History

The trial court did not hold an evidentiary hearing, and as a result the following background facts are taken from documents filed with the Court and counsel's statements to the Court. Staten was born out of wedlock. Raymond F. Handley held Staten out to be his son throughout Staten's life and named Staten's children as beneficiaries of his investment accounts.

Raymond died intestate on March 21, 2016. Staten, who was over sixty years of age at the time, paid the funeral expenses and maintained Raymond's estate's assets with his own funds.

On May 24, 2016, Staten filed a petition to open an unsupervised estate for Raymond and to be appointed personal representative of the estate. He included an affidavit in which he stated that he was Raymond's son and heir.

---

[1] We held oral argument in Indianapolis on December 18, 2017. We thank the parties for their presentations.

The court granted Staten's petition and appointed him to serve as personal representative of Raymond's estate in accordance with the statutes governing unsupervised estates.

[6] On June 24, 2016, Curt Handley, who is Raymond's brother, filed a petition to rescind Staten's appointment and to appoint himself as a successor personal representative of the estate. Handley argued Staten should not be allowed to serve as personal representative because: (1) Staten is not Raymond's biological offspring; and (2) Staten failed to meet the statutory requirements for an heir born out of wedlock. On June 30, 2016, Staten filed an objection to Handley's motion. On July 18, 2016, Staten filed a petition to determine heirship through DNA testing at expense to the estate to establish that he is Raymond's biological son. Specifically, Staten asked that DNA samples be taken from Raymond's siblings to be submitted for testing purposes.

[7] It is understood that the parties discussed the case, with the substance of their discussions occurring through a series of emails, as noted. The email exchange began shortly after Staten filed his request for DNA testing and stated, in relevant part:

> From: Ann Coriden [counsel for Staten]
> Sent: Friday, July 22, 2016 8:50 AM
> To: Jason Guthrie [counsel for Handley]
> Subject: DNA testing
>
> Jason, I know you've been in and out of the office this week and just wanted to make sure that you saw this motion that I filed. It seemed to make sense to address this while we had the hearing scheduled. Let me know if you have any questions.

Thanks,

Ann C. Coriden

_____

From: Jason Guthrie
Sent: Friday, July 22, 2016 9:26 AM
To: Ann Coriden
Cc: Alexis Roberts
Subject: RE: DNA testing

Ann,

Thank you for your e-mail. Yes, I did see the motion that you filed and I sent it to my client, Curt Handley. He has informed me that he has no issues with providing a DNA sample if it will prove once and for all if your client is his brother's son or not. . . . I have not thought this completely through at this point but it seems to me off the top of my head that the DNA results may resolve this matter either in your client's favor or mine without the necessity of a long hearing on the other arguments each of us have. Your thoughts?

Jason H. Guthrie

_____

On Jul 22, 2016, at 11:57 AM, Ann Coriden . . . wrote:

I have a call out to my client to discuss this. I, too, suspect DNA testing will resolve the issues in large part. . . .

Ann C. Coriden

_____

From: Ann Coriden
Sent: Monday, July 25, 2016 1:28 PM
To: Jason Guthrie
Cc: Alexis Roberts
Subject: RE: DNA testing

Jason, I've spoken with my client, and I agree that DNA testing could potentially resolve the outstanding issues. With our clients in agreement on that point, I don't think an evidentiary hearing will be necessary tomorrow. That said, as I understand it, there is still an issue regarding who would serve as the personal representative in the meantime. . . .

I've done some research into DNA testing, and this facility has a turnaround time of about a week. [URL omitted.] If you have another facility that you prefer, let me know.

Thanks,

Ann Coriden

_____

From: Jason Guthrie
Sent: Monday, July 25, 2016 1:37 PM
To: Ann Coriden
Cc: Alexis Roberts
Subject: RE: DNA testing

Ann,

I do not have a different facility that I would prefer using. I will basically just need to know what my client will need to do. Am I safe then in not spending time this afternoon to prepare for a long hearing tomorrow afternoon? In the week or so amount of time that it would take to get the DNA testing done I do not see that much would need to be done in the estate. As long as we can maintain the status quo for now I think I am ok with that provided no major decisions or activities are taken during that time.

Jason H. Guthrie

Appellee's App. Vol. 2, pp. 2-4 (addresses, phone numbers, and form

confidentiality statements omitted).

[8]     Subsequently, the trial court held a hearing on July 26, 2016. During the hearing, Handley allowed Staten to describe their agreement to the court on behalf of both parties. Staten explained:

> [Staten]: Um the parties agree at this point to um both to submit to DNA testing to confirm the paternity um my client Gregory Staten um they uh the parties have agreed that uh we will make arrangements uh for that DNA testing and um at this point I believe the parties agree that the state [sic] will pay for the DNA testing. Um and our, our hope is that will resolve the matters contested or raised in um Mr. Handley's petition to remove the personal representative.
>
> [Court]: And is that agreement of the parties?
>
> [Handley]: Yes it is your Honor.
>
> [Court]: And two questions that I have you said the parties agreed to DNA testing who specifically is to submit to the DNA testing in lieu of the absence of uh Raymond F. Handley's DNA sample?
>
> [Staten]: Uh without that sample um his brother Mr. Curt Handley has agreed to submit to the DNA testing. Um I have done some research on that issue and that, that is and [sic] an acceptable means for determining paternity.
>
> [Court]: And then of course the petitioner will also um, uh, uh submit himself correct?
>
> [Staten]: Yes, yes I'm sorry your Honor.
>
> [Court]: And absence they [sic] payment for it the state [sic] pays for it or who pays for it?
>
> [Staten]: The State [sic] pays for it.
>
> [Court]: Anything else?
>
> [Handley]: Not from our end your Honor.
>
> [Staten]: Actually your Honor just we, we have also discussed in the meantime we expect a fairly quick turn around on these

DNA results but that in the meantime Mr. Staten will stay on as a personal representative um and uh no major decisions will be made regarding any of the state [sic] assets at this point.

[Court]: I assume that's agreeable?

[Handley]: Yes your Honor.

[Court]: Who's going to prepare the order?

[Staten]: I have an order in that regard today your Honor.

[Court]: Present it to us and we'll get you out of here.

Tr. pp. 5-6.

On July 27, 2016, the trial court issued an order stating as follows:

IT IS THEREFORE ORDERED by the Court that Gregory Staten, Sr., and Curt Handley shall submit to DNA testing, at a time and place arranged by counsel for the Personal Representative.

IT IS FURTHER ORDERED that the Estate or [sic] Raymond Handley will be responsible for the costs associated with the DNA tests.

IT IS FURTHER ORDERED that the parties shall cooperate by appearing at the time and place designated and shall take picture identification to the test site with them.

Appellant's App. p. 29. Handley did not object to the order.

On September 26, 2016, Staten notified the trial court that DNA testing was complete, and the probability that Staten and Handley are biologically related is 99.98%. Thus, Staten is Raymond's biological offspring, and Staten moved the trial court to deny Handley's petition to remove Staten as personal representative. Staten further informed the trial court that Handley had refused to withdraw his challenge to Staten's appointment as personal representative.

The trial court scheduled oral argument. Handley filed a response to Staten's notice, arguing: (1) Handley did not dispute the DNA results and thus conceded that Staten was Raymond's biological offspring; but (2) Handley, not Staten, nonetheless was the more appropriate personal representative because Staten did not meet the statutory requirements for an heir born out of wedlock.

[11] After oral argument, the trial court issued an order determining Staten was precluded by statute from serving as personal representative of Raymond's estate because he did not meet the statutory requirements for an heir born out of wedlock, thus, he is not an heir-at-law and entitled to inherit from Raymond's estate. The trial court removed Staten as personal representative and replaced him with Handley. This appeal followed.

## Discussion and Decision

[12] Staten argues the parties agreed that if he was proven to be Raymond's biological child, then Handley would withdraw his challenge to Staten's appointment as personal representative. Staten further asserts that Handley is estopped from arguing Staten does not meet statutory requirements for an heir born out of wedlock. In response, Handley concedes that the parties agreed to submit to DNA testing, and he further concedes that Staten is Raymond's biological son, but he nonetheless argues Staten cannot serve as personal representative.

[13] Staten appeals from a negative judgment. In general, we reverse a negative judgment only if the evidence leads to but one conclusion and the trial court

reached an opposite conclusion. *Frye v. Vigo Cty.*, 769 N.E.2d 188, 192 (Ind. Ct. App. 2002). In this case, the parties do not dispute the rather sparse facts. Instead, they argue questions of law. We review questions of law de novo. *Markey v. Estate of Markey*, 38 N.E.3d 1003, 1006 (Ind. 2015). In such a circumstance, we do not defer to the trial court's determinations of law. *Zoeller v. Sweeney*, 19 N.E.3d 749, 751 (Ind. 2014).

[14] Indiana Code section 29-1-10-1 (1997) governs the appointment of personal representatives by ranking the possible candidates. For purposes of this appeal, the key provision is that an "heir" may qualify, and if there are no heirs, then any qualified person may serve. *Id.*

[15] Handley argues that the question of whether Staten is Raymond's heir for purposes of Indiana Code section 29-1-10-1 is governed by Indiana Code section 29-1-2-7 (2002), which provides in relevant part:

> (b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if one (1) of the following requirements is met:
>
> (1) The paternity of a child who was at least twenty (20) years of age when the father died has been established by law in a cause of action that is filed during the father's lifetime.
>
> (2) The paternity of a child who was less than twenty (20) years of age when the father died has been established by law in a cause of action that is filed:
>
> (A) during the father's lifetime; or
>
> (B) within five (5) months after the father's death.

(3) The paternity of a child born after the father died has been established by law in a cause of action that is filed within eleven (11) months after the father's death.

(4) The putative father marries the mother of the child and acknowledges the child to be his own.

(5) The putative father executes a paternity affidavit as set forth in IC 16-37-2-2.1.

(c) The testimony of the mother may be received in evidence to establish such paternity and acknowledgment, but no judgment shall be made upon the evidence of the mother alone. The evidence of the mother must be supported by corroborative evidence or circumstances.

(d) If paternity is established as described in this section, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, so that the child and the child's issue shall inherit from the child's father and from the child's paternal kindred, both descendants and collateral, in all degrees, and they may inherit from the child. The child shall also be treated as if the child's father were married to the child's mother at the time of the child's birth, for the purpose of determining homestead rights and the making of family allowances.

*Id.*

[16] Handley cited Indiana Code section 29-1-2-7 in his verified petition to remove Staten as personal representative, claiming Staten did not meet the statute's requirements and is not Raymond's heir. In response, Staten argues that Handley is estopped from claiming that Staten is disqualified pursuant to that statute because Handley never raised that issue during their negotiations for DNA testing or in their agreement.

[17] By statute, if a personal representative is disqualified from serving, "any person interested in the estate" may petition the court to seek removal of the personal representative and appointment of a replacement. Ind. Code § 29-1-10-6 (2009). By its plain language, the statute permits, but does not require, interested persons to object to the continued service of a personal representative. As a result, a petitioner may waive a valid challenge to the fitness of a personal representative, similar to other rights that may be waived in estate proceedings. *See, e.g.*, *Haverstick v. Banet*, 370 N.E.2d 341, 357 (Ind. 1977) (personal representative of estate and the decedents' heirs may waive physician-patient privilege); *In re Estate of McNabb*, 744 N.E.2d 569, 573 (Ind. Ct. App. 2001) (heir waived right to court supervision of the administration of an estate by consenting to unsupervised administration); *Matter of Estate of Gray*, 505 N.E.2d 806, 809 (Ind. Ct. App. 1987) (party waived right to challenge probate court's jurisdiction over heirship dispute), *trans. denied*.

[18] Further, equitable estoppel is "'[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had.'" *Binder v. Benchwarmers Sports Lounge*, 833 N.E.2d 70, 73 (Ind. Ct. App. 2005) (quoting Black's Law Dictionary 538 (6th ed. 1990)). The purpose of equitable estoppel is to preclude a party from asserting a right when he or she has led another to form the reasonable belief that a right would not be asserted, and loss or prejudice to the other would result if the right were asserted. *Sheetz v. Sheetz*, 63 N.E.3d 1077, 1081 (Ind. Ct. App. 2016). A statutory defense such as a statute of limitations

may be subject to equitable estoppel if the relevant criteria are met. *Binder*, 833 N.E.2d at 73.

[19] The doctrine of equitable estoppel is not limited to circumstances involving an actual false representation or concealment of existing material fact. *Paramo v. Edwards*, 563 N.E.2d 595, 598-99 (Ind. 1990). Instead, the party arguing in favor of an equitable estoppel must prove conduct of a nature that "prevents inquiry, eludes investigation, or misleads the party who claims the cause of action." *Farrington v. Alsop*, 670 N.E.2d 106, 110 (Ind. Ct. App. 1996).

[20] With those principles in mind, we turn to the creation of the parties' DNA testing agreement, which is to say their contract, and the terms of the agreement itself. The parties' contract, which was submitted on the record in open court without objection, had both written and oral provisions. The trial court's order, which was drafted by Staten and issued by the trial court without objection by Handley, stated that the parties agreed to submit to DNA testing for the purpose of establishing paternity, to be paid for by the estate. In addition, the parties orally agreed that Staten would continue to serve as personal representative pending the results of DNA testing, provided he did not make any major decisions about the estate's assets.

[21] It appears that Handley may have been the first party to suggest during negotiations that the DNA testing could completely resolve the parties' dispute without the need to address the parties' other arguments. He never mentioned a defense under Indiana Code section 29-1-2-7 at any time during the parties'

negotiations or the trial court hearing on the agreement, and he did not contradict Staten when Staten informed the trial court that their agreement would hopefully resolve the dispute. Rather, we find that Handley and Staten negotiated a valid, reciprocal DNA testing agreement. There was a meeting of the minds based on offer, acceptance, and consideration.

[22] Staten agreed to limit his acts as personal representative in exchange for a speedier resolution of the dispute. A reasonable person could ask why the parties would enter into the DNA testing agreement if both sides were not willing to be bound or to act accordingly upon the results to quickly end the dispute. Further, it is unclear why Handley would agree to the testing at all if he intended to maintain his claim that Staten was disqualified from serving as personal representative regardless of whether Staten was proven to be Raymond's son.

[23] We further note that Staten was not an interloper in Raymond's estate. Raymond had always held out Staten to be his son and even named Staten's children as beneficiaries of some of his accounts. In turn, Staten paid for Raymond's funeral expenses and maintained the estate's assets out of his own pocket. In addition, Staten sought to open Raymond's estate within a few months of Raymond's death, while Handley did nothing.

[24] Pursuant to the plain and ordinary language of the parties' agreement, and the circumstances surrounding creation of the agreement, Handley is estopped from challenging Staten's appointment as personal representative on grounds that he

does not meet the statutory requirements for an heir born out of wedlock, as set forth in Indiana Code section 29-1-2-7. *See Kroslack v. Estate of Kroslack*, 504 N.E.2d 1024, 1027 (Ind. 1987) (executor estopped from challenging timeliness of claim by widow; executor ignored widow's "sufficient demand" to take a surviving spouse's statutory share). The court erred in granting Handley's request to remove Staten as personal representative pursuant to that statute.[2] By stipulation and unrefutable evidence, Staten is Raymond's biological son and an heir at law.

[25] However, based on the record before us, it appears that Staten and Handley may both qualify as "heirs" for purposes of appointment as a personal representative under Indiana Code section 29-1-10-1. *See* Ind. Code § 29-1-1-3 (a)(12) (2016) (defining "heirs" as "those persons . . . who are entitled under the statutes of intestate succession to the real and personal property of a decedent on the decedent's death intestate, . . ."). We thus remand to the trial court to determine in light of our opinion who is the most appropriate party to serve as personal representative of the estate.

---

[2] Staten argues that even if Handley is not estopped from challenging Staten's status as heir under Indiana Code section 29-1-2-7, Staten is nonetheless authorized by statute to continue to serve as personal representative. In addition, Staten argues that if he is not authorized by statute to continue to serve as personal representative, then Indiana Code section 29-1-2-7 violates his right to due process of law under the United States Constitution. We need not address those claims.

# Conclusion

For the reasons stated above, we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Najam, J., and Bradford, J., concur.